## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **KEVIN B. BRASHEAR AND** | § | |
| **CHRISTOPHER S. KITCHEN,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.  3:19-cv-00201-L** |
| | § | |
| **PANINI AMERICA, INC.** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

### DEFENDANT'S MOTION TO DISMISS
### PLAINTIFFS' FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT

Respectfully submitted,

*/s/ Joseph A. Unis, Jr.*
**Charles E. Phipps**
Texas Bar No. 00794457
*cphipps@lockelord.com*
**Joseph A. Unis, Jr.**
Texas Bar No. 24075625
*junis@lockelord.com*
**Matthew L. McDougal**
Texas Bar No. 24092799
*matthew.mcdougal@lockelord.com*
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)

**ATTORNEYS FOR DEFENDANT**
 **PANINI AMERICA, INC.**

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    SUMMARY OF THE ARGUMENT ..........................................................4

III.   FACTS AND BACKGROUND ....................................................................5

IV.    ARGUMENT AND AUTHORITIES...........................................................9

     **A.**    RULE 12(B)(1) STANDARD—THE COURT LACKS SUBJECT MATTER
         JURISDICTION........................................................................................9

     **B.**    PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED ......10

          **1.**    Rule 12(b)(6) standard ...........................................................11

          **2.**    Plaintiffs admit that Panini did not (and could not) *knowingly* or
              *intentionally* make any misrepresentation ................................12

          **3.**    Plaintiffs have not been damaged; Panini disclaims any "value" with
              respect to its products on the secondary market .......................12

          **4.**    Plaintiffs could not reasonably rely on any alleged representation ..........15

          **5.**    Plaintiffs' "conspiracy" claim fails as a matter of law .............15

          **6.**    "Unjust enrichment" is not an independent cause of action ....................16

          **7.**    Plaintiffs' fraud claim fails as a matter of law..........................17

          **8.**    Plaintiffs' DTPA claim fails as a matter of law.........................18

          **9.**    Plaintiffs' false advertising claim fails as a matter of law ........19

          **10.**    Plaintiffs' negligence claim fails as a matter of law ..................20

          **11.**    Plaintiffs' fraud, negligence, false advertising, and DTPA claims do not
              otherwise satisfy Rule 9(b)'s particularity requirement............................22

          **12.**    Plaintiffs' claims are waived and/or time-barred.......................23

          **13.**    Plaintiffs cannot recover attorneys' fees and costs from Defendant..........24

          **14.**    Plaintiffs' claims should be dismissed with prejudice ...............25

V.     CONCLUSION AND PRAYER ...................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**State Cases**

*Amstadt v. U.S .Brass Corp.*,
   919 S.W.2d 644 (Tex. 1996)....................................................................18

*BCY Water Supply Corp. v. Residential Invs., Inc.*,
   170 S.W.3d 596 (Tex. App.—Tyler 2005, pet. denied)........................................21

*Bohls v. Oakes*,
   75S.W.3d  473(Tex. App.—San Antonio 2002, pet. denied)................................19

*Centeq Realty, Inc. v. Siegler*,
   899 S.W.2d 195 (Tex. 1995).................................................................20

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
   51 S.W.3d 573 (Tex. 2001)..................................................................17

*Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*,
   908 S.W.2d 415 (Tex. 1995).................................................................24

*Green Int'l, Inc. v. Solis*,
   951 S.W.2d 384 (Tex. 1997)..............................................................24, 25

*Gunn Infinity, Inc. v. O'Byrne*,
   996 S.W.2d 854 (Tex. 1999).................................................................14

*Parkway Co. v. Woodruff*,
   901 S.W.2d 434 (Tex. 1995).................................................................14

*Pinson v. Red Arrow Freight Lines, Inc.*,
   801 S.W.2d 14 (Tex. App.—Austin 1990, no writ)..........................................24

*RT Realty, L.P. v. Tex. Utilities Elec. Co.*,
   181 S.W.3d 905 (Tex. App.—Dallas 2006, no pet.)..........................................20

*Thapar v. Zezulka*,
   994 S.W.2d 635 (Tex. 1999).................................................................20

*Tri v. J.T.T.*,
   162 S.W.3d 552 (Tex. 2005).................................................................15

## Federal Cases

*Alexander v. Grand Prairie Ford, L.P.*,
    No. 3:02-CV-1561-K, 2007 WL 1576260 (N.D. Tex. May 31, 2007) (mem.
    op.) ...................................................................................................................21, 22

*Behler v. East Jefferson Hosp. Serv. Dist. No. 2*,
    No. 12-1171, 2012 WL 13001034 (E.D. La. Aug. 20, 2012) ..................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................4, 16, 21

*Berry v. Indianapolis Life Ins. Co.*,
    608 F. Supp. 2d 785 (N.D. Tex. 2009) .................................................................22

*Blackburn v. City of Marshall*,
    42 F.3d 925 (5th Cir. 1995) ...................................................................................11

*Briggs v. Mississippi*,
    331 F.3d 499 (5th Cir. 2003) .................................................................................25

*Coffey v. Fort Wayne Pools, Inc.*,
    24 F. Supp. 2d  671(N.D. Tex. (1998 ...................................................................18

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ...................................................................................6

*Fraley v. BAC Home Loans Servicing, LP*,
    No. 3:11-CV-1060-N-BK, 2012 WL 779130 (N.D. Tex. Jan. 10, 2012) ........................20, 21

*Goldstar Home Health Sys., Inc. v. Sebelius*,
    No. 4:12-CV-906-A, 2013 WL 3096190 (N.D. Tex. June 17, 2013)......................................11

*Hancock v. Chicago Title Ins. Co.*,
    635 F. Supp. 2d 539 (N.D. Tex. 2009) .................................................................16

*Hilliard v. Ferguson*,
    30 F.3d 649 (5th Cir. 1994) ...................................................................................15

*In re Enron Corp., Sec., Derivative & ERISA Litig.*,
    540 F. Supp. 2d 800 (S.D. Tex. 2007) .................................................................16

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007), *cert. denied*, 552 U.S. 1182 (2008).........................................11

*Lefall v. Dallas Indep. Sch. Dist.*,
    28 F.3d 521 (5th Cir. 1994) ...................................................................................25

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.*,
195 F.3d 765 (5th Cir. 1999) ...................................................................................25

*Pizza Hut Inc. v. Papa John's Int'l Inc.*,
227 F.3d 489 (5th Cir. 2000) ...................................................................................20

*Plotkin v. IP Axess, Inc.*,
407 F.3d 690 (5th Cir. 2005) ...................................................................................22

*Price v. Pinnacle Brands, Inc.*,
138 F.3d 602 (5th Cir. 1998) ........................................................................... *passim*

*Sharifi v. AAMCO Transmissions, Inc.*,
No. CIV.A.3:07-CV-0718-D, 2007 WL 1944371 (N.D. Tex. June 28, 2007) .......................16

*Spencer v. Deutsche Bank Nat. Trust Co.*,
CIV.A. H-14-0164, 2014 WL 7151505, at *5 (S.D. Tex. Sept. 17, 2014),
*report and recommendation adopted*, CIV.A. H-14-0164, 2014 WL 7151538
(S.D. Tex. Dec. 12, 2014) .................................................................................17, 22

*Stewart Glass & Mirror, Inc. v. U.S.A. Glass, Inc.*,
940 F. Supp. 1026 (E.D. Tex. 1996) ...........................................................................11

*Summers v. PennyMac Corp.*,
No. 3:12-cv-1235-L, 2012 WL 5944943 (N.D. Tex. Nov. 28, 2012)....................................25

*Tuchman v. DSC Commc'ns Corp.*,
14 F.3d 1061 (5th Cir. 1993) ..............................................................................5, 11

*Turk v. Pershing LLC*,
No. 3:09-CV-2199-N, 2014 WL 12572906 (N.D. Tex. Dec. 8, 2014)....................................11

*United States ex. rel. King v. Alcorn Labs., Inc.*,
232 F.R.D. 568 (N.D. Tex. 2005) ...........................................................................22, 23

**Federal Rules**

Fed. R. Civ. P.
Rule 9(b) ..................................................................................................4, 16, 22
Rule 12(b)(1)...................................................................................................1, 9
Rule 12(b)(6)...........................................................................................9, 11, 25
15(a) .........................................................................................................25

**State Statutes**

Tex. Bus. & Com. Code Ann. § 17.41. ........................................................................18

Tex. Bus. & Com. Code Ann. § 17.565...........................................................................24

Texas Deceptive Trade Practices Act ........................................................................... *passim*

**Federal Statutes**

CAFA ...................................................................................................................1, 9, 10

**Other Authorities**

http://www.paniniamerica.net/FAQ.cfm ..................................................................6, 7

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Panini America, Inc. ("Defendant" or "Panini") files this Motion to Dismiss Plaintiffs' First Amended Complaint ("Amended Complaint") filed by Plaintiffs Kevin B. Brashear ("Brashear") and Christopher S. Kitchen ("Kitchen") (collectively "Plaintiffs"), as follows:

## I.      **INTRODUCTION**

Panini's motion should be granted—and Plaintiffs' claims should be dismissed with prejudice—because Plaintiffs have failed to set fort any facts that, if true, could result in a finding of liability against Panini.  Plaintiffs assert purported claims that simply are not recognized as independent causes of action, and Plaintiff cannot establish essential elements of their other claims. But even if they could (which they cannot), Plaintiffs fail to plead their alleged fraud, negligence, false advertising, and DTPA claims with particularity.

This is a lawsuit that, at best, belongs in small claims court.  Plaintiffs rely on CAFA jurisdiction; but—as shown by Plaintiffs' Amended Complaint—the time in which Panini fulfills specific redemptions is simply not a "class action" issue.  Plaintiff Brashear has joined another "class representative," Kitchen, in an effort to cure jurisdictional and other pleadings defects, which plagued his Original Complaint.  Even then, Plaintiffs' jurisdictional claims are still conclusory and miss their mark.  With respect to the merits of their claims (or lack thereof), Plaintiffs admit that (1) although the fulfillment of redemptions is conditioned on future, third-party performance; (2) numerous redemptions are timely fulfilled.  Failing to timely redeem is not the same as never intending to redeem.  Plaintiffs have alleged the former, and cannot show the latter.  Moreover, as illustrated by Kitchen's additional factual allegations, each Plaintiff's claims are unique and fact specific.  Plaintiffs' underlying claims fail as a matter of law; and even if either Brashear or Kitchen, individually, could assert a viable claim (which neither can do), they still could not satisfy the commonality and/or typicality requirements necessary to certify a class.

Plaintiffs take issue with a general policy, in specific instances; but the facts of each case, with respect to each redemption, are different.  Indeed, each redemption is unique—e.g., they are retrieved from sealed, randomly assorted packs, and submitted to Panini at different times; their expiration dates are specific to each set (as determined by the release date for that set); their fulfillment is conditioned on future, third-party performance (with different redemptions contingent on the performance of different third-parties); and, as shown by Plaintiffs' Memorandum in Opposition to Panini's Motion to Dismiss[1] (Doc. 10), some customers prefer to wait for their specific redemptions, complaining or objecting when Panini timely sends a replacement card (which nevertheless, is Panini's absolute right).

So in short, Plaintiffs take issue with the redemption program (1) when Panini waits on a third-party to perform, so that Panini can fulfill the specific redemption; but also (2) when Panini timely sends a replacement card instead.  From Plaintiffs' perspective, when a specific redemption cannot be timely fulfilled due to factors outside of Panini's control, Panini should be liable, regardless of what it does to remedy that situation.  But such subjective (and irrational) dissatisfaction with Panini's standard, customer-oriented policies is not a viable cause of action.

Indeed, nothing about the redemption program is fraudulent or illegal.  To the contrary, Panini discloses to customers, *pre-purchase*, that (1) its sealed packs of randomly assorted cards "may or may not" contain redemptions, which (2) are issued when component parts have not arrived in time for final production, and which (3) will expire on a date certain after the product is released.  This is all known (or should be known) *prior to any customer's purchasing decision*.

---

[1] That motion was denied as moot, after Plaintiffs' filed their Amended Complaint.  However, in their response to that motion (Doc. 10), Plaintiffs admitted that Panini has fulfilled redemptions by sending a comparable card.  *See* Doc. 10 at p. 4.  Plaintiffs then pivot to argue—without authority or evidence—that "the 'comparable' card is worth nowhere near the value of the 'specified' card."  *Id.*  Again, Panini does not "value" their cards for the secondary market; and it clearly has unfettered discretion to select a "comparable" card.  Nevertheless, these additional allegations in Plaintiffs' prior briefing suggest that Plaintiffs, themselves, fall into this camp that would prefer to wait for third-parties to deliver to Panini, so that they can receive a specific redemption.

Plaintiffs allege that Panini fails to meet "guaranteed timeframes," but by their very nature, redemptions are fluid—e.g., if there are 75 redemptions issued for the same Odell Beckham autographed card, some redemptions may be submitted at the beginning of the two-year period (after the product is released, prior to expiration), while others may be submitted at the end; however, the autographed cards (or their necessary component parts) may not be returned to Panini until a year (or more) after the product is released and the redemptions are issued, with all 75 being returned by such third-party (e.g., Odell Beckham) at the same time. Thus, if Plaintiffs were to have their way, the customers who submitted a redemption at the beginning of the period would be required to accept (and Panini would be obligated to send) a replacement card; while the customer who fortuitously redeemed later would receive the actual, autographed card. But some customers may prefer to wait for a specific redemption—which is outside of Panini's control—instead of being forced to accept a replacement card.

Moreover, any "delay" in fulfilling some redemptions is harmless because (1) the customer is not guaranteed a redemption when he or she purchases a sealed pack of randomly assorted cards; and (2) even then, Panini disclaims and makes no representation as to the value of its cards on the secondary market. Plaintiffs received exactly what they paid for: a pack of trading card, which "may or may not" include redemptions. Nevertheless, Plaintiffs' rest their damages claims on alleged "lost profits," due to fluctuations in "value" (months *after* any transaction with Panini). Plaintiffs would have "the perfect be the enemy of the good," taking issue with the redemption program's general policies as applied to specific circumstances. In other words, because Panini's timing with respect to certain redemptions—which is contingent on third-party performance, outside of Panini's control—is not 100% consistent, in practice, with Panini's aspirational, future-oriented policies, Plaintiffs would argue that the *entire* program is a fraud. Nonsense.

In sum, Plaintiffs fault Panini for either sending replacement cards, or continuing to wait for third-parties to perform, so that Panini can deliver specific redemption cards.  According to Plaintiffs' allegations, Panini's good faith efforts to accommodate its customers have resulted in a no-win situation, notwithstanding Panini's disclaimers regarding the nature of redemptions, and the "value" of its cards on the secondary market.  Plaintiffs' attempt to extort Panini, and to exploit a flexible policy—necessitated by the unpredictability of future, third-party conduct; but which also seeks to accommodate customer preferences—is simply not supported by law.

## II.   <u>SUMMARY OF THE ARGUMENT</u>

Each of Plaintiffs' specific claims is addressed herein.  None of Plaintiffs' claims is pled in a way that would enable Plaintiffs to recover under the law.  Plaintiffs purport to assert claims for (1) "tort" (or more specifically, negligence and/or false advertising) (2) unjust enrichment (or, alternatively, money had and received); (3) conspiracy; (4) civil fraud; and (5) alleged violations of the Texas Deceptive Trade Practices Act (the "DTPA"), related to Panini's redemption card program. To the extent Plaintiffs have even asserted recognized claims ("tort" and "unjust enrichment" are not independent causes of action), the limited facts that Plaintiffs *have* alleged, their admissions, and the evidence implicated by their Amended Complaint, show that Plaintiffs cannot establish essential elements of those claims as a matter of law.  Moreover, Plaintiffs fail to plead their fraud, negligence, false advertising, and DTPA claims with sufficient particularity.

Here—even after identifying the redemption cards allegedly at issue, and detailing when and how such cards were acquired—Plaintiffs' Amended Complaint is still devoid of facts explaining (1) what alleged misrepresentation Panini made *in the context of such acquisitions*; (2) how such representation was false or misleading; (3) facts demonstrating Plaintiffs' reliance on that representation; and/or (4) the extent of Plaintiffs' alleged injuries.  Consequently, Plaintiffs' Amended Complaint still fails to comply with the mandates of *Twombly*, *Iqbal*, and Rule 9(b).

In addition to the fact that Plaintiffs' individual claims fail, courts—including the Northern District of Texas—have routinely dismissed attempts by buyers to assert class actions against trading card manufacturers, refusing to find any injury when such purchasers fail to receive a specific card.  *See*, *e.g.*, *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602 (5th Cir. 1998).  Indeed, the purchaser of a pack of trading cards does not receive a guarantee that he or she will receive any *specific* card.  *See*, *e.g.*, *id*. at 605 ("[P]laintiffs received a pack of trading cards for their money; '[t]hey got exactly what they paid for and they do not and cannot allege otherwise.'").  Here, customers knowingly purchased packs of cards that "may or may not" include redemptions; and such customers who, in fact, received redemptions (i.e., putative class members) have not been damaged by any alleged delay with respect to Panini being able to fulfill those redemptions.

Nevertheless, this Court need only consider Plaintiffs' factual allegations, which are woefully deficient, and not their alleged "class" claims.  *See*, *e.g.*, *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1067 n. 5 (5th Cir. 1993) ("Since there was no class certification, we treat this case as one brought by the named plaintiffs individually.").  For the reasons stated below, Plaintiffs have failed to state a claim upon which relief can be granted, and allowing Plaintiffs to re-plead (for a second time) would be futile.

### III.   FACTS AND BACKGROUND[2]

Plaintiffs admit: "Panini manufactures … collectible cards … which are sealed in packs (*so that the consumer does not know which individual cards it may receive*) that are then sold in boxes;" and within those sealed packs, within those boxes, "Panini *randomly* places one or more 'redemption cards'…."  *See* Am. Compl. at ¶ 7 (emphasis added).  Plaintiffs further explain that a redemption card has "a code that has to be scratched off and entered on Panini's website in order

---

[2] Although the allegations in Plaintiffs' Amended Complaint must be taken as true in this Motion, Defendant reserves the right to challenge those factual allegations should there be a need to do so.

to receive the actual card featuring the sports personality, which is a card signed by the sports personality identified on the redemption card." *Id*.  Plaintiffs also admit that the fulfillment of a redemption rests on a future contingency, which is often outside of Panini's control because: "Panini has not had the card autographed by the player by the time the product is packaged." *Id*. As more accurately stated in the "FAQ" section of Panini's website:[3]  Panini "reluctantly" uses redemptions, "when the components have not been received [from third-parties] in time to make final production." *See* Ex. 1 (http://www.paniniamerica.net/FAQ.cfm, last visited Mar. 4, 2019).[4] Panini also includes an express disclaimer that "redemption cards are made available <u>as they are received</u>" and an express reservation of the right to "send a comparable card in its place if the specific card is not available…." *See id*.  Also, Panini clearly communicates on its website: (1) that the expiration of any redemption begins to toll at the time of "product release;" and (2) "exchange cards marked after the expiration date cannot be redeemed." *Id*.  But even then, "Panini America makes every effort to exhaust all possibilities before designating a redemption card," and it is continually assessing its redemption program to better serve its customers.  *See id*.

---

[3] "Documents that a defendant attaches to its motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to its claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (internal quotes omitted).  Here, there is no dispute that Panini's website and its packaging are central to Plaintiffs' claims.  Indeed, the Amended Complaint purports to reference Panini's website.  *See, e.g.*, Am. Compl. at ¶ 7 ("As noted on its website…").  And Plaintiffs attach (as Exhibit "B" to their Amended Complaint) the webpage available at http://www.paniniamerica.net/faq.cfm, thus placing the contents of that page at issue.  However, Plaintiffs fail to attach any of the answers to the italicized questions listed under the subheading "Redemptions." Significantly, each italicized "FAQ" is itself a "link," which when clicked, expands that section of the webpage to include an answer to that question.  Similarly, Plaintiffs implicate Panini's packaging by alleging that Panini's expiration date on its redemption cards "is defective as it is not reasonably placed or written to alert reasonable consumers."  *See* Am. Compl. at ¶ 13.  But Plaintiffs fail to provide an example of the "warning of expiration" that Plaintiffs subjectively and unilaterally declare "unreasonable."  Nevertheless, Plaintiffs admit that (1) Panini includes such a disclaimer on the <u>outside</u> of its product; and (2) that many boxes of cards do <u>not</u> include redemptions (which thus, cannot be expected, and are not guaranteed).  *See id*. at ¶ 13 ("The warning of expiration is in extremely small font and located on the back of the box of cards *which may or may not contain one of the redemption cards at issue*." (emphasis added)).

[4] A true and correct printout of the relevant page from Panini's website is attached as **Exhibit 1** to *Defendant's Appendix in Support of Motion to Dismiss and Brief in Support* (the "Appendix").  Exhibit 1 has been highlighted by the undersigned counsel to show relevant expansions of "linked" text (which Plaintiffs omitted from their Exhibit "B"), and also paginated for the Court's quick reference.

Under the subheading "General Questions," Panini's website further explains: "[w]e [i.e., Panini] do not place any value on our cards for the secondary market." *See id.* Nevertheless, Plaintiffs accuse Panini of enticing the putative class "to purchase Panini cards with the <u>hope</u> of obtaining a redemption card … which <u>theoretically</u> gives the class ownership of a valuable card." *See* Am. Compl. at ¶ 15. But as discussed below, these are neither true nor actionable allegations.

The Amended Complaint attaches a picture of a purported redemption for a 2016 Panini Spectra, Rookie Patch Autographs, Hunter Henry, which would have expired on March 14, 2018. *See* Am. Compl., its Ex. A. However, the Amended Complaint is devoid of any allegation regarding "Hunter Henry," and it does not connect that redemption to Plaintiffs' claims. Similarly, Paragraph 16 of the Amended Complaint alleges that Panini failed to redeem certain Cody Kessler cards, and failed to send "comparable cards" in their place. But again, the Amended Complaint fails to connect those allegations to Plaintiffs' claims. Indeed, neither Brashear nor Kitchen has alleged that (1) *he* submitted a Cody Kessler redemption card, which (2) Panini failed to redeem. With respect to Plaintiffs' individual claims, Plaintiffs identify different redemptions.

Moreover, Plaintiffs base their claims on the mere "assumption" that they will never receive the delayed redemptions allegedly at issue. *See id.* at ¶ 21. And although Brashear simply references a single, allegedly "<u>unexpired</u> card," with respect to his individual claims, he seeks to represent a class that includes "persons who initiated the redemption process for an actual redemption and the redemption was rejected as <u>expired</u>." *See id.* at ¶ 26 (emphasis added). Kitchen claims to have obtained "expired redemption cards that have not been honored by Panini," but even then, Kitchen provides no further detail as to those expired redemptions, and no explanation as to *why* Panini should honor such expired redemptions. *See id.* at ¶ 23.

- 7 -

Plaintiffs, generally, critique the expiration date on Panini's redemptions.  *See, e.g.*, Am. Compl. at ¶¶ 13-14.  Nevertheless, Plaintiffs admit: (1) that each "box of cards … may *or may not* contain one of the redemption cards at issue;" and (2) even then, Panini includes an expiration notice on the back of each box.  *Id*. at ¶ 15.  For example, on the outside of each box produced in the "2014 Panini Prizm Football" set, Panini expressly states: "All cards are <u>randomly inserted</u> across the production run and <u>are not guaranteed in any individual pack, box, or case</u>.  Panini America, Inc. makes no representation as to the future value of its cards.  <u>This product may contain</u> <u>redemptions that expire in March 2016</u>."  *See* **Exhibit 2** attached to Defendant's Appendix (which is a true and correct copy of a Panini box) (emphasis added).  Thus, unlike the irrelevant 2007 Upper Deck product referenced in the online article that Plaintiffs attach to their Amended Complaint (as its Exhibit "D"), Panini includes an express disclaimer regarding *expired* redemptions on the *outside* of its products.

Moreover, in the comments section to that 2012 article (attached to the Amended Complaint), collectors further undermine Plaintiffs' alleged putative class claims, intimating that collectors *know* redemptions expire, that the practice is *not* illegal (*see* Am. Compl., its Ex. D, comment by "Yoky" at p. 8 of 26), and further stating:

- "The guy bought a 5 year old product.  Don't buy OLD products if you dont [sic] wasn't expired redeems.  Sorry, but I think this [plaintiff] is a con man in a way[.]" (*Id*., comment by "Jeff Johnson" at pp. 9-10);

- "I DONT THINK HE SHOULD GET ANYTHING, HE BOUGHT CASES AT A [sic] EXTREME DISCOUNT SINCE THE REDEMPTIONS HAD EXPIRED, EITHER HE IS STUPID OR, NOPE JUST PLAIN STUPID."  (*Id*., comment by "ddizal" at p. 10);

- "…if you are a collector, you know that anything over 2-3 years will NOT get redeemed." (*Id*., comment by "doug" at p. 14); and

- "Guys redemption's [sic] expire get over it! … What the Heck did you expect? … [Beckett] said … that redemption cards not redeemed by the expiration date are destroyed so as to maximize the value of the cards that were redeemed on time.  BTW.  DON'T BUY FIVE

YEAR OLD PRODUCT AND EXPECT THE REDEMPTION'S TO BE VALID!" *Id*., comment by "clinton johnson" at p. 16.

Furthermore: "the sad thing is we all know someone or it happened to themselves where upper deck and or panini … have fulfilled or taken care of some expired redemption[.]" *Id*., comment by "deez" at p. 17.

Of course, these are statements by the very collectors that Plaintiffs allegedly seek to represent as a "class," admitting: (1) that collectors *know* redemptions expire; (2) Panini has nevertheless accommodated customers; and (3) if received, cards that are not redeemed are destroyed.  Moreover, the above comments were made on or before April 15, 2012, and the otherwise irrelevant article was published on or before April 12, 2012.  *See* Am. Compl., its Ex. D.  Thus, at a minimum, Plaintiffs (and the putative class) have been on actual or constructive notice of possible redemption issues since 2012, at the latest.

## IV.   ARGUMENT AND AUTHORITIES

### A.   RULE 12(B)(1) STANDARD—THE COURT LACKS SUBJECT MATTER JURISDICTION

As a threshold matter, this Court lacks subject matter jurisdiction over Plaintiffs' claims, which nevertheless fail as a matter of law.  The party asserting jurisdiction—here, Plaintiffs— "must carry the burden for a Rule 12(b)(1) motion to dismiss," which is subject to the same standard of review as a motion to dismiss pursuant to Rule 12(b)(6).  *See Behler v. East Jefferson Hosp. Serv. Dist. No. 2*, No. 12-1171, 2012 WL 13001034, at *2 (E.D. La. Aug. 20, 2012)).  "CAFA gives federal courts original jurisdiction over class actions when they meet three jurisdictional prongs: (1) the class action consists of 100 or more class members; (2) minimal diversity exists; and (3) the amount in controversy exceeds $5 million."  *Id*. (citing 28 U.S.C. § 1332(d)(2)).

In the instant case, Plaintiffs' allegations that the putative class action consists of 100 or more class members, and that the amount in controversy exceeds $5 million, are conclusory and not supported by any proof. Panini disclaims the "value" of its products on the secondary market; and tellingly, the Amended Complaint is silent regarding the alleged "value" of Plaintiffs' specific redemptions at issue. Moreover, Plaintiffs do not (and cannot) allege that Panini simply does not fulfill redemptions. Plaintiffs' damages (if any), are their actual, out-of-pocket damages—i.e., the price paid for a pack of cards that included an unfulfilled redemption, minus the residual value of its other contents. Of course, that analysis will be different for each and every pack of cards (and the residual "value" of some packs with unfulfilled redemptions may, nevertheless, still exceed their purchase price). Furthermore, different sets are sold at different prices (although packs within the same set are uniformly priced).

Thus, even assuming that Plaintiffs' claims had merit (which they do not), to satisfy the amount in controversy requirement under CAFA, Plaintiffs would need to show approximately 200,000 unfulfilled redemptions, assuming the average pack containing a redemption is $25 (which is high, and which also fails to account for the residual value of its other contents). Even then, Plaintiffs would still need to satisfy the commonality and typicality requirements to certify such a class (which Plaintiffs cannot do). Conclusory allegations regarding the number of redemption requests (which is the alleged number of *total* redemptions, <u>not</u> *unfulfilled* requests)— as well as unqualified statements regarding "value" on the secondary market—are clearly intended to get the Court's attention; however, they are not relevant to the Court's analysis. Accordingly, this case should be dismissed for lack of subject matter jurisdiction.

## B.   PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

In addition to being procedurally defective, Plaintiffs' claims also fail substantively, and should be dismissed with prejudice.

1.     **Rule 12(b)(6) standard**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied*, 552 U.S. 1182 (2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). The court may dismiss a complaint under Rule 12(b)(6) if either the complaint fails to assert a cognizable legal theory, or the facts asserted are insufficient to support relief under a cognizable legal theory. *See Stewart Glass & Mirror, Inc. v. U.S.A. Glass, Inc.*, 940 F. Supp. 1026, 1030 (E.D. Tex. 1996).

Furthermore, when considering a motion to dismiss a putative class representative's claims under Rule 12(b)(6), courts need only look at the plaintiffs' individual allegations—not those that might be made by other members of the purported class—to determine whether a motion to dismiss for failure to state a claim should be granted. *See Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1067 n. 5 (5th Cir. 1993) ("Since there was no class certification, we treat this case as one brought by the named plaintiffs individually."); *see also Turk v. Pershing LLC*, No. 3:09-CV-2199-N, 2014 WL 12572906, at *3 (N.D. Tex. Dec. 8, 2014) (citing *BookLocker.com, Inc. v. Amazon.com, Inc.*, 650 F. Supp. 2d 89, 97 n.3 (D. Me. 2009) (noting that when considering a motion to dismiss prior to class certification, only the named plaintiffs' claims are before the Court)); *Goldstar Home Health Sys., Inc. v. Sebelius*, No. 4:12-CV-906-A, 2013 WL 3096190, at *5 (N.D. Tex. June 17, 2013) (the court "considers only the claim of this plaintiff.").

In the instant case—for the reasons discussed below—Plaintiffs' individual claims fail as a matter of law and should be dismissed *with prejudice*.

- 11 -

2.      **Plaintiffs admit that Panini did not (and could not) *knowingly* or *intentionally* make any misrepresentation**

As an initial matter, Plaintiffs admit: "the facts clearly establish that Panini *does not know* when, if ever, the card of value, or any card for that matter will rightfully be delivered to Plaintiffs." Am. Compl. at ¶ 37 (emphasis added).  Accordingly, Plaintiffs admit that Panini could not have acted with (1) knowledge, or (2) intent; and thus, claims for which either is a necessary element (e.g., fraud and DTPA violations) fail as a matter of law.  Panini is not (and cannot be) knowingly or intentionally misrepresenting facts at the time it issues a redemption card.  Indeed, Panini cannot know when each and every athlete for which a redemption is issued will return his or her specific cards (or the necessary components to manufacture those cards), which is why some redemptions are fulfilled quickly, while others may take longer to fulfill.

3.      **Plaintiffs have not been damaged; Panini disclaims any "value" with respect to its products on the secondary market**

Plaintiffs allege that "[t]hey paid for a card [and] that they never received anything of value from Panini."  Am. Compl. at ¶ 25.  But that is simply not true.  First, Panini sells sealed *packs* of random assorted cards, at uniform prices, which "may or may not" include redemptions; not *individual* redemption cards.  Second, Panini does not place "value" on those cards, which it distributes in sealed, randomly assorted packs.   Indeed, Panini makes no guarantee or representation as to the aggregate or individual value of its cards, and expressly disclaims value. *See* Ex. 1 (FAQs: "What is the monetary value of my card or set?  We [Panini] do not place any value on our cards for the secondary market.").  Notwithstanding this express disclaimer, Plaintiffs allege "at the time they obtained the specific redemptions mentioned herein, the actual cards were more valuable, but this amount has declined significantly beyond the four-months in which they should have received their cards pursuant to the guarantees made by Panini."  Am. Compl. at ¶ 25. Plaintiffs fail to offer support for this conclusory (and irrelevant) claim.  Plaintiffs further allege:

- 12 -

"Panini has made a material misrepresentation that it would provide Plaintiffs with an actual card of value rather than a worthless cardboard redemption with a scratch off code." *Id.* at ¶ 36.  But again, that is simply not true.  Panini (1) disclaims value; and (2) expressly states that sealed packs "may or may not" include redemptions.

Similarly, without explaining how or why *they* have been damaged, Plaintiffs allege "[t]he delay or failure to redeem causes damage to the putative class because the redeemable cards are more often than not players whose cards are in high demand at the time of receipt of the redemption card.  A delay can cause the value of said actual card to diminish and, of course, failure to ever supply the actual card causes additional damage." *Id.* at ¶ 15.  This is yet another baseless and conclusory allegation.  Plaintiffs further allege "[t]he putative class is damaged because the putative class is enticed to purchase Panini cards *with the hope of obtaining a redemption card*." *Id.* (emphasis added).  But that is simply not true, and is contradicted on the face of the Amended Complaint.  As a matter of fact and law, no customer can reasonably expect to receive a redemption.  *See*, *e.g.*, *Price*, 138 F.3d at 605 ("[P]laintiffs received a pack of trading cards for their money; '[t]hey got exactly what they paid for….'").

Plaintiffs attempt to conflate the purchase process with the redemption process, but those are different and distinct components in the alleged sequence of events:

> First, the customer purchases a sealed pack, of randomly assorted cards, at a uniform price, which "may or may not" include a redemption (and thus, he or she *cannot* have any reasonable expectation as to the specific contents of that pack);

> Second, if a redemption is retrieved, then the customer must timely submit that redemption pursuant to Panini's terms; and

> Third, for Panini to fulfill that specific redemption, a necessary third-party (outside of Panini's control) must perform by signing and returning the autographed cards (or their other component parts).

- 13 -

In this case, Plaintiffs appear to be relying on alleged representations, *post*-purchase, *outside of the context of any transaction*. To be actionable—and to "induce" Plaintiffs' purchase, as alleged—any representation must be *pre*-purchase. However, Panini does not "guarantee" that a customer will receive a redemption (or, for that matter, any specific card). Panini sells sealed packs of cards, not individual redemption cards. Plaintiffs claim that "they clearly lost money by paying for and not receiving anything of value from Panini despite its guarantee to the contrary." *Id*. at ¶ 39. Again, that is simply not true. Plaintiffs each received a pack of cards for their money (which "may or may not" include redemptions). Panini makes no representation as to the value of its cards on the secondary market. Moreover, Plaintiffs have not alleged (and cannot allege) that a pack of cards—even if it contains a redemption—is worthless. Thus, when purchasing a pack, Plaintiffs *always* received some "value" in the aggregate (although Panini makes no guarantee). Accordingly, Plaintiffs have not alleged (and cannot allege) an actionable misrepresentation.

Furthermore, alleged "mental anguish" damages are not recoverable as a matter of law. Plaintiffs purport to be trading card collectors, who complain of delays when receiving redemptions in sealed, randomly assorted, and uniformly priced packs, which "may or may not" include redemptions. Plaintiffs have not alleged, and cannot allege, emotional injuries of the type and severity to allow an award of "mental anguish" damages. In order to prove such damages, Plaintiffs must demonstrate "a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (quotations omitted). Plaintiffs must present direct evidence and specific details of the nature, duration and severity of their mental anguish which establishes a substantial disruption in their daily routine. *See Gunn Infinity, Inc. v. O'Byrne*, 996 S.W.2d 854, 861 (Tex. 1999). Plaintiffs cannot satisfy that burden.

4.      **Plaintiffs could not reasonably rely on any alleged representation**

Plaintiffs could not reasonably rely on any alleged representation regarding redemptions when purchasing a sealed pack of Panini trading cards because, as Plaintiffs admit: (1) Panini sells cards "sealed in packs (*so that the consumer does not know which individual cards it may receive*)" (Am. Compl. at ¶ 7 (emphasis added)); (2) "Panini *randomly* places redemption cards" in those packs (*id.*); (3) a "box of cards … may or *may not* contain one of the redemption cards at issue." (*id*. at ¶13 (emphasis added)); and (4) even then, Panini includes an express disclaimer *with an expiration notice* on the back of each box. *Id.* at ¶ 15. Thus, Plaintiffs could not reasonably expect to get a redemption. *See, e.g., Price*, 138 F.3d at 605 ("[P]laintiffs received a pack of trading cards for their money; '[t]hey got exactly what they paid for….'"). Therefore, any claim for which "reliance" is a necessary element (e.g., fraud, false advertisement, or, to the extent alleged, negligent misrepresentation) fails as a matter of law and should be dismissed.

5.      **Plaintiffs' "conspiracy" claim fails as a matter of law**

Plaintiffs' "conspiracy" claim also fails as a matter of law because Panini—which is the only named defendant—cannot conspire with itself.  It is a long-standing rule that a "corporation [such as Panini] cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994).  Plaintiffs' new, conclusory allegation that Panini conspired with unnamed "dealers and distributors" is illogical and cannot sustain this claim.  The necessary elements of conspiracy under Texas law are: (1) two or more persons, (2) an objective to be accomplished; (3) a meeting of the minds on a subject or course of action; (4) one or more overt acts; and (5) resulting damages. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).  Here, Plaintiffs do not allege any facts—as opposed to mere conclusions—supporting the inference that any of these elements exist.  Plaintiff do not allege any facts indicating that Panini and unnamed "dealers

and distributors" had a meeting of the minds about *anything*, much less a meeting of the minds about a course of action to accomplish a specific objective. Nor do Plaintiffs allege that Panini took any overt act in furtherance of the conspiracy. Plaintiffs' claims are exactly the sort of conclusory allegation that the Supreme Court has instructed this Court to ignore when determining whether a complaint states an actionable claim. *See Twombly*, 550 U.S. at 557. Plaintiffs cannot merely allege that Panini "conspired" with unnamed "dealers and distributors;" they must allege facts from which the Court can draw the reasonable inference that Panini had a meeting of the minds with others about an objective, and took steps to carry out that objective.

Moreover, "[w]ithout an underlying tort, there can be no claim for a conspiracy to commit the tort." *Sharifi v. AAMCO Transmissions, Inc.*, No. CIV.A.3:07-CV-0718-D, 2007 WL 1944371, at *5 (N.D. Tex. June 28, 2007) (citing *Sanchez v. Liggett & Myers, Inc.,* 187 F.3d 486, 491 (5th Cir. 1999)). Furthermore, like his claim for fraud negligence, and DTPA violations (discussed *infra*), Plaintiffs' conspiracy claim must also satisfy Rule 9(b). *In re Enron Corp., Sec., Derivative & ERISA Litig.*, 540 F. Supp. 2d 800, 805 (S.D. Tex. 2007) ("The particularity requirement of Rule 9(b) also governs a conspiracy to commit fraud."). Accordingly, Plaintiffs' "conspiracy" claim should be dismissed.

### 6.      "Unjust enrichment" is not an independent cause of action

Texas Court have consistently held that unjust enrichment is not an independent cause of action. *See, e.g., Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009). But even if such claim was valid under Texas law, it is unclear *how* Panini is unjustly enriched by selling packs of cards, at standard uniform prices, when no single pack guarantees receipt of a redemption card, and when the components for such cards are not timely received from third-parties, and thus, are not in Panini's possession, custody, or control. Thus, Plaintiffs' "unjust enrichment" claim also fails. To the extent Plaintiffs seeks to recast that claim as a claim for

"money had and received," the analysis is no different.  Plaintiffs have not alleged (and cannot show) that they "paid money to Panini in error," or that Panini "holds money which in equity and good conscience belongs to Plaintiffs."  Plaintiffs purchased cards from third-party dealers, not Panini; Panini does not place any value on its cards for the secondary market; and as a matter of fact and law Panini cannot "continue[] to get richer by keeping" cards that it has not received.

### 7.   Plaintiffs' fraud claim fails as a matter of law

Plaintiffs' fraud claim should also be dismissed.  To state a cause of action for fraud or fraudulent misrepresentation, a plaintiff must allege facts sufficient to show that: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and thereby suffered injury.  *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).  Significantly, a promise to do or refrain from doing an act in the future is not actionable.  *See, e.g., Spencer v. Deutsche Bank Nat. Trust Co.*, CIV.A. H-14-0164, 2014 WL 7151505, at *5 (S.D. Tex. Sept. 17, 2014), *report and recommendation adopted*, CIV.A. H-14-0164, 2014 WL 7151538 (S.D. Tex. Dec. 12, 2014) ("Given the contingent nature of the alleged future promise to perform, and the absence of any allegations that would support an inference that Defendants never intended to perform, [Plaintiff] has not stated a plausible claim for fraud.").

In the instant case, Panini "reluctantly" uses redemptions "when the components have not been received [from third-parties] in time to make final production."  *See* Ex. 1, App. 05; *see also* Am. Compl. at ¶ 7 (admitting that the fulfillment of a redemption rests on a future contingency: "Panini has not had the card autographed by the player by the time the product is packaged.").  Accordingly, "redemption cards are made available as they are received," and Panini expressly

reserves the right to "send a comparable card in its place if the specific card is not available…." *See* Ex. 1, App. 09. Moreover, unless and until a redemption is submitted by the customer to Panini, the customer is entitled to nothing. *See* Am. Compl. at ¶ 7. Thus, as a matter of fact and law, at the time Panini randomly places a redemption card in a sealed pack, it cannot knowingly make a false representation about a *specific* card that (1) does not currently exist; and which (2) may or may not ultimately come into existence (based on future third-party conduct). Nor can Plaintiffs reasonably rely on representations that admittedly rest on future contingencies. Accordingly, Plaintiffs' fraud claim fails and should be dismissed.

### 8.      Plaintiffs' DTPA claim fails as a matter of law

Plaintiffs' DTPA claim should also be dismissed. To recover under the DTPA, a plaintiff must show: (1) that he or she is a "consumer" under the DTPA; (2) that the defendant can be sued under the DTPA; (3) that the defendant violated a specific provision of the DTPA; and (4) that the defendant's violation is a producing cause of the plaintiffs' damages. Tex. Bus. & Comm. Code § 17.41, *et seq.*; *see also Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). Moreover, "[i]t is well settled that the mere failure to perform a promise does not constitute a misrepresentation actionable under the DTPA unless it can be shown that at the time the promise was made, the party making the promise had no intentions of fulfilling the promise." *Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 686 (N.D. Tex. 1998). Here, the same allegations and admissions that undermine Plaintiffs' fraud claim further undermine their DTPA claim.

Plaintiffs suggest that failure to achieve 100% customer satisfaction through a general policy intended to address fact-specific and future-oriented contingencies should constitute a "false, misleading, or deceptive" act or practice. Nonsense. Panini intends to fulfill redemptions (and does), when third-parties timely return the necessary component parts.

By Plaintiffs' own admission, a box of cards "may or may not" contain a redemption.  *See* Am. Compl. at ¶ 13.  Even then, a redemption cannot be entered until *after* that purchase, and it may not be fulfilled until months after it is submitted, pursuant to Panini's express terms.  Thus, the complained of conduct—i.e., Panini's alleged delay and failure to timely redeem redemption cards—clearly, does not take place *at the time of the consumer transaction*.

Additionally, Panini does not sell individual redemption cards, and Plaintiffs could not purchase a "redemption card" from Panini; rather, Panini sells packs of cards in which "[a]ll cards are randomly inserted across the production run and are not guaranteed in any individual pack, box or case."  *See*, *e.g.*, Ex. 2, App. 27.  Thus, even when a customer receives a redemption, such redemption is received in the context of a pack of randomly assorted trading cards, which "may or may not" contain a redemption.  *See* Am. Compl. at ¶ 13; *see also* Ex. 2, App. 27 ("This product may contain redemptions that expire in March 2016").  Also, Panini "makes no representation as to the future value of its cards."  *See* Ex. 2, App. 27; *see also* Ex. 1, App. 21 ("We do not place any value on our cards for the secondary market.").  Thus, as a matter of law, when a customer purchases such a pack, he or she "g[ets] exactly what they paid for and they … cannot allege otherwise."  *Price*, 138 F.3d at 605.

Finally, Plaintiffs fail to plead sufficient facts to determine whether Plaintiffs are "consumers" under the DTPA, with respect to redemptions, which are received at random, and submitted *subsequent* to any purchase.  Whether a party is a consumer is a question of law to be determined by the court.  *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.—San Antonio 2002, pet. denied).  Accordingly, Plaintiffs' DTPA claim fails and should be dismissed.

### 9.   Plaintiffs' false advertising claim fails as a matter of law

Plaintiffs' purported "false advertising" claim fails for the same reasons as its other claims: Panini did not knowingly or intentionally make a false representation, nor does it guarantee a

redemption in any sealed, randomly assorted pack.  The elements Plaintiffs must allege to sustain a false advertising claim are: (1) that Defendant made a false or misleading statement as to its product(s); (2) that there is actual deception or a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised products involve interstate commerce; and (5) that there is a likelihood of injury to Plaintiffs.  *Pizza Hut Inc. v. Papa John's Int'l Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).  The failure to prove the existence of any single element of the *prima facie* case is fatal to the Plaintiffs' claim.  *Pizza Hut*, 227 F.3d at 495 (citations omitted).  Here, Plaintiffs fail to assert any allegations that would give rise to a viable "false advertising" claim.  *See* Am. Compl. at pp. 13-14.  Specifically, Plaintiffs fail to plead facts showing that the alleged statements are actually false or misleading; and Plaintiffs fail to plead facts showing that the alleged statements have caused any deception to consumers, who purchase sealed packs of randomly assorted cards, at uniform prices, that "may or may not" include redemptions.  While Plaintiffs cannot establish any of these elements, failure to establish one, alone, is fatal to their claim.  Accordingly, Plaintiffs' "false advertising" claim fails as matter of law.

**10.** **Plaintiffs' negligence claim fails as a matter of law**

"To establish a claim for negligence, a plaintiff must prove (1) the existence of a legal duty, (2) a breach of that duty, and (3) damages proximately caused by that breach."  *Fraley v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1060-N-BK, 2012 WL 779130, at *8 (N.D. Tex. Jan. 10, 2012).  "Duty is the threshold inquiry in a negligence claim."  *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *RT Realty, L.P. v. Tex. Utilities Elec. Co.*, 181 S.W.3d 905, 914 (Tex. App.—Dallas 2006, no pet.). "If there is no legal duty, liability for negligence cannot exist." *See Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999).

Here, Plaintiffs' negligence claim fails because Plaintiffs have not alleged any facts demonstrating the existence of a legal duty, a breach of that duty, and damages proximately caused by that breach. *See Fraley*, 2012 WL 779130, at *8. Instead, in conclusory fashion, Plaintiffs merely allege that: "Panini has a well-established pattern and practice of failing to adhere to its delivery schedule and failing to send the actual cards within the redeemable timeframe;" (Am. Compl. at ¶ 10); and that "it is nearly impossible to contact Panini…" *Id*. at ¶ 12. But Plaintiffs base their claims, largely, on Better Business Bureau hearsay; not on their personal knowledge. Plaintiffs' conclusory "negligence" allegations are devoid of any factual enhancement; and thus, such allegations are not entitled to the presumption of truth, and Plaintiffs' negligence claim fails as a matter of law. *See* Am. Compl. at p. 10; *see also Twombly*, 550 U.S. at 555.

Furthermore, to the extent Plaintiffs are attempting to assert a claim for negligent misrepresentation, that claim also fails. In addition to their inability to establish damages and reasonable reliance, Plaintiffs cannot show an actionable representation. To be actionable, "the misrepresentation at issue must be one of existing fact, not a promise of future conduct." *See*, *e.g.*, *Alexander v. Grand Prairie Ford, L.P.*, No. 3:02-CV-1561-K, 2007 WL 1576260, at *6 (N.D. Tex. May 31, 2007) (mem. op.). "A promise to do or refrain from doing an act in the future is not actionable because it does not contain an existing fact." *Id*. at *6 (relying on *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied)).

Here, any statement regarding a redemption is not a statement of *existing* fact. By their very nature, redemptions are future oriented, and their fulfillment rests on future contingencies— e.g., (1) whether the redemption is timely submitted by the customer; and (2) whether Panini ever, in fact, receives the specific card—or its necessary components—from the third-party at issue. Thus, Plaintiffs' allegations relate to future promises and/or statements of intent, not existing facts;

and such allegations cannot sustain a negligent misrepresentation claim.  *See Alexander*, 2007 WL 1576260, at *6; *see also Spencer*, 2014 WL 7151505, at *5.

11. **Plaintiffs' fraud, negligence, false advertising, and DTPA claims do not otherwise satisfy Rule 9(b)'s particularity requirement**

In addition and in the alternative, Plaintiffs' claims for fraud, negligence, false advertising, and DTPA violations should be dismissed because they do not satisfy the heightened level of pleading set forth in Rule 9(b), which requires Plaintiffs to "state with particularity the circumstances constituting the [alleged fraud or misrepresentation]."  FED. R. CIV. P. 9(b). Moreover, it is well-established that "[c]laims alleging violations of the DTPA are subject to the requirements of Rule 9(b)."  *See e.g. Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009).

> Rule 9(b) has four purposes: to ensure that the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; to protect defendants against frivolous suits; to eliminate fraud actions in which all the facts are learned after discovery; and to protect defendants from undeserved harm to their goodwill and reputation.

*United States ex. rel. King v. Alcorn Labs., Inc.*, 232 F.R.D. 568, 570 n.2 (N.D. Tex. 2005).  Here, Plaintiffs fail to satisfy the requirements of the rule, and Panini should be availed of its protections.

Indeed, "[t]o comply with FRCP 9(b), a plaintiff must 'allege the particulars of time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what the person obtained thereby, otherwise referred to as the who, what, when, where and how of the alleged fraud.'"  *United States ex. rel. King v. Alcorn Labs, Inc.*, 232 F.R.D. 568, 570 (N.D. Tex. 2005) (quoting *United States ex. rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)).  Thus, the Rule 9(b) standard requires specificity as to "when and why the statements were made, and an explanation of why they were fraudulent or misrepresented."  *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

In the instant case, Plaintiffs have not shown that Panini engaged in any fraudulent conduct or made any actionable misrepresentations in connection with the acquisition of any pack of cards that contained a redemption card, and/or the subsequent submission of such redemption to Panini (which Plaintiffs fail to detail or explain).  Moreover, Plaintiffs fail to identify a single specific date on which a false claim was made, and Plaintiffs do not identify a single person involved in any alleged fraud or misrepresentation.  *See*, *e.g.*, *United States ex. rel. King*, 232 F.R.D. at 572 (noting courts have dismissed claims where plaintiffs did not identify those who made the misrepresentations, the time the misrepresentations were made, or the places at which the misrepresentations were made).  Furthermore, Plaintiffs have failed to allege any facts as to how the alleged fraud was committed.  *See id.* (holding allegations of fraud lacking factual support "are too vague and meaningless to provide the defendants with any useful information in defending against [plaintiffs'] claims.").

Notwithstanding Plaintiffs' defective pleading, Plaintiffs cannot establish injury, intent, or reliance as a matter of law.  *See*, *e.g.*, *Price*, 138 F.3d at 605 ("[P]laintiffs received a pack of trading cards for their money; '[t]hey got exactly what they paid for and they … cannot allege otherwise.'").  Thus, Plaintiffs' claims should be dismissed.

### 12.    Plaintiffs' claims are waived and/or time-barred

Furthermore, the comments section of the otherwise irrelevant article that Plaintiffs attach to their Amended Complaint as its Exhibit "D" shows that: (1) collectors *know* redemptions expire; (2) Panini has nevertheless accommodated customers; and (3) if received, cards that are not redeemed are destroyed.  Such comments were made and posted on or before April 15, 2012.  *See* Am. Compl., its Ex. D.  Therefore, at a minimum, Plaintiffs (and the putative class) have been on actual or constructive notice of any alleged redemption issues since 2012, but nevertheless, have continued to purchase trading cards for the past seven (7) years.

- 23 -

Thus, to the extent Plaintiffs were injured (they were not), they likely waived any claim and/or failed to mitigate their alleged damages by continuing to purchase trading cards after April 12, 2012, given the article they attach as Exhibit "D" to their Amended Complaint. *See*, *e.g.*, *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995); *see also Pinson v. Red Arrow Freight Lines, Inc.*, 801 S.W.2d 14, 16 (Tex. App.—Austin 1990, no writ) ("[w]hen an injured party fails to comply with the duty to mitigate damages, recovery is not permitted as to that part of damages that could have been avoided or was incurred as a result of the failure to mitigate."). Additionally and/or alternatively, given the otherwise irrelevant article from 2012, Plaintiffs' claims are likely time-barred, as the statute of limitations for fraud is four (4) years (Tex. Civ. Prac. & Rem. § 16.004), and the statute of limitations under the DTPA is two (2) years. *See* Tex. Bus. & Com. Code Ann. § 17.565 ("All actions brought under this subchapter must be commenced … within two years after the consumer … in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice."). The statute of limitations for negligence is also two (2) years. *See* Tex. Civ. Prac. & Rem. § 16.003. The article was published more than six (6) years *before* Plaintiffs filed the instant lawsuit.

### 13.   <u>Plaintiffs cannot recover attorneys' fees and costs from Defendant</u>

Because the facts pled are legally insufficient to establish Plaintiffs' claims for DTPA violations, fraud, "tort," negligence, false advertising, conspiracy, unjust enrichment, and/or money had and received, they are also insufficient to support Plaintiffs' request for attorneys' fees and costs. Accordingly, Plaintiffs' claim for attorneys' fees and costs should also be dismissed with prejudice. *See*, *e.g.*, *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (disallowing attorneys' fees on breach of contract claim because plaintiff did not prevail on that claim, and plaintiff was not awarded damages).

- 24 -

14.   **Plaintiffs' claims should be dismissed with prejudice**

Finally, this lawsuit should be dismissed with prejudice.  Although "a court should freely give [a party] leave" to amend its pleadings "when justice so requires," FED. R. CIV. P. 15(a), a court should deny leave to amend when the amendment, if granted, would be futile.  *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999); *Lefall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994).  To determine futility, the Fifth Circuit considers whether an amendment could survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6); if an amendment would fail to state a claim upon which relief could be granted, the court may deny leave to amend.  *See Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003).  Here, further amendment would be futile.  As discussed above, binding Fifth Circuit precedent bars Plaintiffs' claims. Plaintiffs have already amended once, and yet their allegations and admissions continue to undermine their asserted causes of action.  Accordingly, "no amount of artful or creative pleading of facts will permit Plaintiffs to state a claim upon which relief can be granted," and allowing Plaintiffs to file a second amended pleading would be futile.  *See Summers v. PennyMac Corp.*, No. 3:12-cv-1235-L, 2012 WL 5944943, at *10 (N.D. Tex. Nov. 28, 2012).  The Court should dismiss Plaintiffs' claims with prejudice.

## V.   **CONCLUSION AND PRAYER**

Each of Plaintiffs' claims against Panini fails as a matter of law, and should be dismissed with prejudice.  Furthermore, Plaintiffs' claims against Panini for interest and attorneys' fees are barred because he has not pleaded any viable cause of action.  *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

Defendant Panini America, Inc. requests the Court to dismiss Plaintiffs' claims against Panini with prejudice.  Panini further requests the Court to award it all other relief, in law or in equity, to which Panini may be justly entitled.

Dated: April 22, 2019                  Respectfully submitted,

*/s/ Joseph A. Unis, Jr.*
**Charles E. Phipps**
Texas Bar No. 00794457
*cphipps@lockelord.com*
**Joseph A. Unis, Jr.**
Texas Bar No. 24075625
*junis@lockelord.com*
**Matthew L. McDougal**
Texas Bar No. 24092799
*matthew.mcdougal@lockelord.com*
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)

**ATTORNEYS FOR DEFENDANT
PANINI AMERICA, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the above and foregoing instrument was served upon counsel for all parties on April 22, 2019.

Scott R. Bickford
usdcedtx@mbfirm.com; srb@mbfirm.com
**MARTZELL, BICKFORD & CENTOLA**
338 Lafayette Street
New Orleans, LA 70130
***Counsel for Plaintiffs***

*/s/ Joseph A. Unis, Jr.*
**Attorney for Defendant Panini America, Inc.**