UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KEVIN B. BRASHEAR AND
CHRISTOPHER S. KITCHEN,
individually and on behalf of
similarly situated individuals

CIVIL ACTION 3:19-cv-00201-L

JUDGE SAM A. LINDSAY

VERSUS

PANINI AMERICA, INC.

JURY DEMANDED

## BRIEF IN SUPPORT OF MOTION TO CERTIFY CLASS

**NOW INTO COURT**, through undersigned counsel, come Putative Class Plaintiffs, **Kevin B. Brashear and Christopher S. Kitchen**, (hereinafter "Plaintiffs" and/or "Class Representatives"), individually and on behalf of all others similarly situated, who file this Brief in Support of the Motion to Certify Class in compliance with LR 23.2, to wit:

**MAY IT PLEASE THE COURT:**

The requirements set forth in Rule 23 of the Federal Rules of Civil Procedure are met. This case involves common issues of fact and law. The claims of the named class members and the claims of the persons to be named as class representatives are typical of the claims of members of the putative class. The claims of the members of the putative class are so numerous as to make mass joinder an ineffective tool.

Moreover, common issues predominate over any individual issues that may exist and certification is the superior procedural device to handle these cases. Class certification would result in definable class boundaries and in a single liability trial on the predominant issues.

## TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................. 3

I.     FACTS .......................................................................................................... 5

II.    CAUSES OF ACTION ............................................................................... 10

    1.  Violation of the DTPA ...................................................................... 10
    2.  Civil Fraud ........................................................................................ 11
    3. Tort .................................................................................................... 12
    4.  Conspiracy to Defraud ..................................................................... 12
    5. Unjust Enrichment ............................................................................ 13

III.  CLASS DEFINITION ................................................................................ 13

IV.   LAW ........................................................................................................... 14

    A. This Court has Discretion on the issue of Class Certification ............... 14
    B. The Requirements of FRCP 23 ............................................................. 14

V.    ARGUMENT .............................................................................................. 15

    A. Numerosity ........................................................................................... 15
    B. Commonality ........................................................................................ 17
    C. Typicality ............................................................................................. 19
    D. Adequacy .............................................................................................. 20
    E. Predominance ....................................................................................... 21
    F. Superiority ............................................................................................ 23

VI. PROPOSED CLASS COUNSEL ................................................................ 24

VII. PROPOSED CLASS REPRESENTATIVES .............................................. 24

VIII. NOTICE TO CLASS MEMBERS ............................................................ 25

IX. CLASS CERTIFICATION DISCOVERY ................................................. 26

X. PAYMENT OF PLAINTIFFS' ATTORNEY'S FEES ............................... 26

XI. CONCLUSION ........................................................................................... 27

## TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE NO.**

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591, 626 n.20 (1997)....................................................................... 21, 22

*Berger v. Compaq Computer Corp.,*
257 F.3d 475, 479 (5th Cir. 2001). ....................................................................... 14

*Castano v. American Tobacco Company,*
84 F.3d 734, 744 (5th Cir. 1996) .......................................................................... 14

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156, 177-78 (1974) ......................................................................... 14, 20

*Forbush v. J.C. Penny Co.,*
994 F.2d 1101, 1106 (5th Cir. 1993) .................................................................... 17

*General Telephone Company of Southwest v. Falcon,*
457 U.S. 147, 151, n.13 (1982)............................................................................. 21

*Hernandez v. Motor Vessel Skyward,*
61 F.R.D. 558 (S.D. Fla. 1973) affirmed without opinion 507 F.2d 1279 (5th Cir. 1975)........... 23

*In re: Corrugated Container Antitrust Litigation,*
643 F.2d 195, 208 (5th Cir. 1981) ........................................................................ 20

*James v. City of Dallas,*
254 F.3d 551, 570 (5th Cir. 2001) .................................................................. 15, 17

*Jenkins v. Raymark Industries, Inc.,*
782 F.2d 468, 472 (5th Cir. 1986) ........................................................................ 22

*Johnson v. Georgia Highway Express, Inc.*
7488 F.2d 714 (5th Cir. 1974) ....................................................................... 26, 27

*Mullen v. Treasure Chest Casino, LLC,*
186 F.3d 620, 624–25 (5th Cir. 1999), abrogated on other grounds by
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................. 15, 17, 19, 20

*Norhill Energy LLC v. McDaniel,*
517 S.W.3d 910, 917–18 (Tex. App. 2017), review denied (Dec. 8, 2017) .................... 13

*Sterling v. Velisicol Chemical Corp.,*
855 F.2d 1188, 1197 (2nd Cir. 1987)..................................................................... 23

*Zeidman v. J. Ray McDermott & Co., Inc.*,
651 F.2d 1030, 1038 (5th Cir. 1981) ................................................................... 15

**FEDERAL RULES**

Rule 23 ............................................................................................................. 1, 14

Rule 23(a) ...................................................................................................... 14, 21

Rule 23(a)(1) ....................................................................................................... 15

Rule 23(a)(2) ....................................................................................................... 17

Rule 23(a)(3) ....................................................................................................... 19

Rule 23(a)(4) ....................................................................................................... 20

Rule 23(b) ........................................................................................................... 14

Rule 23(b)(3) ....................................................................................... 15, 21, 22, 23

Rule 23(g) ...................................................................................................... 24, 27

**STATUTES**

Tex. Bus. & Com. Code Ann. § 17.41 *et seq* ................................................... 10, 18

Tex. Bus. & Com. Code Ann. § 17.46(24) .......................................................... 10

Tex. Bus. & Com. Code Ann. § 17.50 ................................................................. 10

Tex. Bus. & Com. Code Ann. § 17.50(a)(2) ........................................................ 10

**LOCAL RULES**

N.D. Tex. R 23.2 .......................................................................................... 1, 16, 26

**SECONDARY SOURCES**

7A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane,
Federal Practice and Procedure § 1780 at 576-577 (2nd ed. 1986) .................... 22

Hebert B. Newberg, Newberg on Class Actions § 310 at 3-49 (4th ed. 2002) ........... 17

Hebert B. Newberg, Newberg on Class Actions § 313 at 3-77 (3rd ed.) .................. 19

I.    **FACTS**

This class action seeks compensatory damages, punitive damages, and any other relief that this Court deems just and proper arising from Panini America, Inc.'s ("Panini") predatory scheme involving its knowingly false and misleading guarantee to provide valuable, sought after trading cards, or comparable substitutes, through its use of a process in which it places "redemption cards" in packs of cards rather than the actual autographed card, thereby requiring the individual who received it to register an online account with Panini and enter the scratch-off code from the redemption card. This starts the consumer's waiting period to receive an actual card, which very often never occurs, or does so after a long period of time, well beyond that which is guaranteed by Panini. Panini has engaged and continues to engage in this deceptive scheme whereby it induces consumers to purchase its products based on the promise that they could receive autographed cards with full knowledge that in the event the consumer receives a redemption card instead, Panini will not deliver – timely or otherwise – the actual signed trading card or a "comparable" card as expressly promised. Moreover, Panini has unlawfully conspired with third-party "authorized" Panini dealers and distributors to sell and distribute its products containing the redemption cards in furtherance of its scheme designed to dupe consumers.

Plaintiffs filed their Complaint - Class Action on January 25, 2019 (Rec. Doc. 1) and their Amended Complaint - Class Action on April 8, 2019 (Rec. Doc. 13) to challenge the unlawful, unfair, and deceptive practices of the Panini. Class Representatives and the Class Members are consumers and collectors of sports collectibles, trading cards and certified memorabilia who have fallen victim to Panini's scheme.

Panini is the largest manufacturer in the world of sports collectibles, trading cards and certified memorabilia with licenses with all major sports, such as the NFL, NBA, Major League

Baseball and others. Panini manufactures individual collectible cards featuring a sports personality which are sealed in packs (so that the consumer does not know what individual cards it may receive) that are then sold in boxes. These boxes contain either one or multiple packs of sealed cards, depending on the particular product. Within the packs, Panini very often places one or more "redemption cards" instead of an actual card featuring a sports personality. These redemption cards are simply a white piece of cardboard with a code that must be scratched off and entered on Panini's website to receive the actual card featuring the sports personality, which is a card autographed by the sports personality identified on the redemption card.

As noted on Panini's website, redemption cards are placed in packs instead of the actual card because Panini has not had the card autographed by the player by the time the product is packaged. While Panini states that it "reluctantly uses redemptions" and Panini "makes every effort to exhaust all possibilities before designation a redemption card," redemption cards are actually very common.[1] The procedure for redeeming these "redemption cards" is done through a "reservation process" on Panini's website. Panini guarantees that it "will send a comparable card in its place if the specified card is not available to ship within 4 months or 8 months depending on what timeframe is selected during the reservation process."[2] The "reservation process" consists of simply entering the redemption card code on a designated page on Panini's website and selecting delivery within 4 or 8 months from a dropdown menu with 4 months being the default.

Despite its guarantees, Panini has engaged in an extensive pattern and practice of failing to adhere to its delivery schedule and failing to send the actual specified cards or comparable cards

---

[1] See https://www.paniniamerica.net/support/new-ticket/faq.html, "What is a redemption card?", last visited on April 18, 2019.
[2] See also https://www.paniniamerica.net/support/new-ticket/faq.html, "How long does it take to receive my redemption card?"

within the redeemable timeframes, if it sends a card at all. Upon information and belief, Panini knew at the time it made its guarantees to the Plaintiffs that it would likely never redeem these "redemption cards" much less within the promised time frames. In other words, at the time it made its guarantees, Panini had no intent to fulfill its promise to provide the actual specified cards or comparable cards within the redeemable timeframes if at all. Despite its knowledge and intent that it was not going to fulfill these "redemption cards" – whether at all or timely – Panini deceptively employed the empty promise of "redemption cards" to induce consumers to purchase its products to enrich itself.

Panini also places an expiration date on its redemption cards that is generally two years from the product's rollout. However, notice of the expiration date is defective as it is not reasonably placed or written to alert reasonable consumers. The warning of expiration is in extremely small font and located on the back of the box of cards which may or may not contain one of the redemption cards at issue. Despite the presence of an inadequate notice or warning of expiration, the business practices of Panini render such notice or warning irrelevant. Despite the expiration, Panini continues to market, distribute and sell boxes or packets of cards that contain redemption cards that are already beyond the two-year redemption period.[3]

The failure to timely redeem redemption cards, if at all, and the practice of marketing, distributing and selling redemption cards which have already expired is a national problem. The delay or failure to redeem causes damage to Plaintiffs and Class Members because the redeemable cards are more often than not of players whose cards are in high demand at the time of receipt of

---

[3] A verdict has already been rendered against another card manufacturer, Upper Deck, for this same exact practice of selling already expired cards.  See Beckett webpage, located at https://www.beckett.com/news/upper-deck-loses-court-case-over-redemption-cards/, last visited on April 18, 2019.

the redemption card. A delay can cause the value of said actual card to diminish and, of course, failure to ever supply the actual card causes additional damage in the form of deprivation of any value the card holds or once held. The Plaintiffs and Class Members are damaged because they are enticed to purchase Panini cards with the hope of obtaining a redemption card, they then obtain the redemption card which gives the class ownership of a valuable card as per Panini's guarantee, yet that valuable card is never provided to the putative class by Panini.

Class Representatives, Kevin B. Brashear and Christopher S. Kitchen, have purchased and collected cards manufactured by Panini for numerous years and have themselves fallen victim to Panini's scheme. Mr. Breasher purchased an opened box of football trading cards at a Panini authorized dealer in Texas. Breasher obtained a redemption card for an Odell Beckham autographed card from one of the packs inside, and he entered the code from the redemption on Panini's website on February 27, 2016, shortly after obtaining it. This redemption remains unfulfilled well beyond Panini's misrepresentation and untruthful guarantee that it would do so by or before the four-month timeframe selected by Mr. Brashear for delivery. Panini has also failed to deliver a "comparable" card to Mr. Brashear, consistent with Panini's pattern and practice in failing to uphold its guarantee.

Additionally, Mr. Kitchen has obtained multiple unexpired redemption cards that have remained unfulfilled, including redemptions for autographed cards of Andrew Benintendi and Orlando Arcia that he obtained from packs of baseball cards purchased from a Panini authorized dealer, as well as "expired" redemption cards that have not been honored by Panini. Mr. Kitchen submitted the codes from the referenced unexpired redemptions on Panini's website on January 7 and 28, 2018, respectively, shortly after obtaining them, and they remain unfulfilled well beyond

Panini's guarantee that it would do so by or prior to the four-month timeframe selected by Mr. Kitchen for delivery. Panini has also failed to deliver a "comparable" card to Mr. Kitchen.

After attempting to reach Panini on numerous occasions by phone and email, Mr. Kitchen was finally contacted by a Panini representative who expressed concerns regarding the redemption program but promised to provide Kitchen with substitute cards for his outstanding redemptions. To this date, Mr. Kitchen has still not received these "substitute cards." As alleged in Paragraph 19 of the original Complaint – Class Action, Mr. Brashear was never contacted directly by Panini regarding his claims, despite his numerous attempts through various avenues to reach Panini.[4]

As a result of Panini's actions, Mr. Brashear and Mr. Kitchen have suffered economic damages, as well as other damages that they are entitled to under the Deceptive Trade Practices Act and Texas law. They paid for a product and never received anything of value for from Panini. Further, at the time they obtained the specific redemption cards mentioned herein and attempted to redeem same the actual cards were more valuable, but this amount has declined significantly beyond the four-months in which they should have received their cards pursuant to the guarantees made by Panini. This assumes that they will ever receive an actual card that they paid for, which may never happen, as this is a national issue among many buyers of Panini's products, as established by the numerous posts made throughout the Internet and specific complaints the undersigned counsel received just since filing this lawsuit. Since this matter was filed, counsel for Plaintiffs have received numerous emails from purchasers of Panini products (some with attached screenshots of their unfulfilled redemptions) that demonstrate the exact same issues as the Class Representatives and further prove that Panini's unlawful scheme is an ongoing and national problem that requires action by a large class of persons.

---

[4] Rec. Doc. 1, Complaint – Class Action, ¶ 19.

## II.   CAUSES OF ACTION

Plaintiffs, individually and on behalf of all other similarly situated individuals, have brought five causes of action against Panini which all arise from its scheme: 1. Violations of the Texas Deceptive Trade Practices Act "DTPA", V.T.C.A., Bus. & C. § 17.41, *et seq*; 2. Civil Fraud; 3. Tort; 4. Conspiracy to Defraud; and 5. Unjust Enrichment.

### 1.  Violation of the DTPA

The Texas Deceptive Trade Practices Act ("DTPA") prohibits false, misleading or deceptive practices.[5] Plaintiffs alleged that Panini violated the DTPA by misleading Plaintiffs and the Putative Class about its promise to deliver the actual card or a "comparable" one as guaranteed in the event the Plaintiffs received a "redemption card" and redeemed same. Panini violated the DTPA because it breached its "warranty" that it will deliver a card or "comparable" one within four or eight months, as chosen by Plaintiffs.[6] Panini further violated the DTPA because it failed to disclose to Plaintiffs that it knew that it would not deliver the promised cards timely, or if at all, and because such failure to disclose was intended to induce Plaintiffs into a transaction into which the Plaintiffs would not have entered had the information been disclosed.[7]

Panini's acts were unfair, deceptive, misleading and unconscionable to consumers. Because of Panini's deceptive pattern and practice, Plaintiffs and the Putative Class suffered damages including, but not limited to, the purchase price of the Panini products, the ownership of the cards of which they were deprived by Panini's failure to deliver, and the loss in those cards' value because of Panini's failure to timely deliver same.

---

[5] See Tex. Bus. & Com. Code Ann. § 17.50.
[6] See Tex. Bus. & Com. Code Ann. § 17.50 (a)(2).
[7] See Tex. Bus. & Com. Code Ann. § 17.46(24).

## 2.  Civil Fraud

Under the Civil Fraud cause of action, Plaintiffs allege that Panini engaged in a pattern and practice wherein it deceptively represented that it would provide Plaintiffs with an actual card of value rather than a worthless cardboard redemption card with a scratch off code. This misrepresentation was false as no card of value was ever delivered to Plaintiffs. Panini knew this statement or representation to be false when it was made. Because Panini has a pattern and practice not to fulfill its promises, Panini made this same misrepresentation to thousands of consumers and collectors throughout the country.

These misrepresentations by Panini were made with the knowledge of the truth that it would not deliver the promised cards timely, since the facts clearly establish that Panini does not know when, if ever, the card of value will rightfully be delivered to Plaintiffs. By and through the pattern and practice of deceit, misrepresentation and/or omission, Panini intended to induce Plaintiffs and Class Members to alter their position to their detriment – i.e. that Plaintiffs would purchase Panini's products with the hope of receiving "redemption cards" which could then be redeemed for valuable, sought after trading cards, or comparable substitutes – as Panini knew that Plaintiffs would reasonably expected that Panini would send Plaintiffs their expected card of value if they did in fact receive a "redemption card."

Plaintiffs justifiably and reasonably relied on Panini's representations and omissions to their detriment. Plaintiffs fully expected that Panini would timely send them a card of value when they purchased and obtained a redemption card. Plaintiffs have been damaged by Panini's pattern and practice as described herein. By failing to deliver, either timely or at all, Panini caused injury to Plaintiffs since they clearly lost money by paying for and not receiving anything of value from Panini despite its guarantee to the contrary. Moreover, in the rare instances wherein Panini

provided the redemption cards, albeit untimely, Panini's feet-dragging damaged Plaintiffs to the extent the cards lost value.

As a direct and proximate result of Panini's misrepresentations and omissions, Plaintiffs and the Class Members have suffered damages, including, without limitation, the purchase price of the Panini products, the ownership of the cards of which they were deprived by Panini's failure to deliver, and the loss in those cards' value because of Panini's failure to timely deliver same. Panini's conduct was willful and malicious and was designed to maximize Panini's profits and harm to Plaintiffs.

### 3. Tort

Under the Tort cause of action, Plaintiffs' allegations support a claim for negligence and false advertising pursuant to Texas law, and they have suffered damages as a result. The common law doctrine of negligence is comprised of three elements: (1) duty; (2) breach of that duty; and (3) damages proximately resulting from that breach. Panini has a duty to fill redemption cards in the manner as stated on its own website, this duty was breached when it failed to deliver the actual card or a "comparable" one as guaranteed, and this failure was the direct cause for Plaintiffs' economic damages and mental anguish as well as all other damages allowed for by law.

Plaintiffs also have claims under the general tort cause of action for false advertising. Panini clearly guarantees and advertises on its website that if a buyer receives a redemption card and enters the code on its site, Panini will deliver the actual card or a "comparable" one within four or eight months. As established by the allegations, Panini has failed to honor this guarantee.

### 4. Conspiracy to Defraud

Under the Conspiracy to Defraud cause of action, Plaintiffs allege that Panini has unlawfully conspired with third-party "authorized" Panini dealers and distributors to sell and

distribute its products containing the redemption cards that serve as the primary object for Plaintiffs' claims. Thus, working in concert with its authorized dealers, Panini conspired to defraud Plaintiffs and members of the Plaintiff Class.  Plaintiffs have been damaged, as described herein, by Panini's conspiracy to defraud.

### 5.  Unjust Enrichment – "Money Had and Received"

Under the Unjust Enrichment cause of action, which is the equivalent to a claim for "money had and received" under Texas law,[8] Plaintiffs allege that Panini received a benefit from Plaintiffs when they inequitably received the Plaintiffs' money yet did not deliver what Plaintiffs paid for – the promise of fulfilled "redemption cards." Plaintiffs were injured by Panini's failure to deliver as well as the loss in those cards' value because of Panini's failure to timely deliver same. Panini was unjustly enriched by its unlawful actions resulting in damages to the Plaintiffs. By not providing Plaintiffs with cards of value for their worthless redemption cards with simply a code to exchange on Panini's website despite Plaintiff's indisputably timely reservations, as well as not fulfilling these worthless redemption cards that were paid for by Plaintiffs but that have "expired" according to Panini's inadequate warning, Panini continues to get richer by keeping "money" that belongs to Plaintiffs but has not been returned. Additionally, Panini gets richer by not fulfilling expired redemption cards that are purchased by Plaintiffs and then obtaining some form of value for the autographed cards that were originally designated for these redemptions by exchanging/selling them in another manner.

### III.   CLASS DEFINITION

Putative Class Plaintiffs seek the certification of the following class:

---

[8] See Norhill Energy LLC v. McDaniel, 517 S.W.3d 910, 917–18 (Tex. App. 2017), review denied (Dec. 8, 2017).

**All persons who have initiated the redemption process for an actual card on Panini's website and who did not receive a card within the selected timeframe (4 or 8 months) and/or persons who initiated the redemption process for an actual card and the redemption was rejected as expired.**

Putative Class Plaintiffs pray that the requested class be certified, and class counsel and class representatives be appointed.

## IV.   LAW

A singular and consistent unlawful pattern and practice engaged in by Panini that causes monetary damage and other damage to a large number of people should be handled through a class action. The applicable law favors class treatment in this type of case.

A.    *THIS COURT HAS DISCRETION ON THE ISSUE OF CLASS CERTIFICATION.*

A District Court has substantial discretion in determining whether to certify a class pursuant to FRCP 23.[9] In exercising this discretion, the Court does not evaluate the merits of the case but considers only whether the requirements of Rule 23 are met.[10] The Court may consider materials beyond the pleadings such as relevant facts, the claims of the parties and the applicable substantive law.[11]

B.    *THE REQUIREMENTS OF FRCP 23*

The requirements for class certification in federal courts are found in FRCP 23. FRCP 23(a) sets out four prerequisites to be met in class actions: numerosity, commonality, typicality, and adequacy. Once the Court finds that these four prerequisites are met, it then considers the three categories listed in FRCP 23(b). Class certification is appropriate if the Court finds that any one of the three categories of FRCP 23(b) is satisfied. Here, plaintiffs seek certification under FRCP

---

[9] *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).
[10] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).
[11] *Castano v. American Tobacco Company*, 84 F.3d 734, 744 (5th Cir. 1996).

23(b)(3) which in turn contains two requirements: (1) that questions of law or fact common to members of the class predominate over questions affecting only individual members and (2) that a class action is superior to other methods of adjudication.

## V.   **ARGUMENT**

This Honorable Court should certify the class for the following reasons:

(1)     The requirements of numerosity, commonality, typicality and adequacy are met.

(2)     The issues common to the class predominate over any individual issues which might arise.

(3)     A class action is superior to any other methods of adjudication available to the Court.

### A.   *NUMEROSITY*

FRCP 23(a)(1) simply requires that the class be so large that joinder of all members is impracticable. Plaintiffs must merely demonstrate some evidence or reasonable estimate of the number of purported class members.[12] While size alone is not determinative of whether joinder is impracticable, a potential class of over 100 members "is within the range that generally satisfies the numerosity requirement."[13] Additional factors that may be relevant for determining whether joinder is impracticable include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim."[14]

In the instant case, upon information and belief, the precise number of individuals in the class is known only to Panini but is believed to include well over 10,000.[15] As set forth in the First

---

[12] *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001).
[13] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624–25 (5th Cir. 1999), abrogated on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).
[14] *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).
[15] Rec. Doc. 13, First Amended Complaint – Class Action, ¶ 27.

Amended Complaint – Class Action, a recent redemption request in January 2019 was request number 1,141,367.[16] Accordingly, upon information and belief, Putative Class Plaintiffs allege that the redemption requests are numbered sequentially, and thus there have been over 1 million redemption card reservations made as of January 2019. Although individuals often have more than one outstanding redemption, the putative class likely far outnumbers 10,000 persons. This is well above the range of individuals which generally satisfies the numerosity requirement. Significantly, it is already known to Counsel for Plaintiffs that the number of potential class members easily exceeds 100 based on the emails that have been sent to Counsel, as well as the posts on the Internet, containing details that match the claims of the Class Representatives.

As for the value of the claims, the autographed cards that are being unlawfully withheld from the consumer class can range in value from as little as $5-$10 to well over $1000 per card.[17] Importantly, while the value of each individual claim may not exceed a couple of thousand dollars, due to the tremendous number of redemptions that remain unfulfilled by Panini, as well as those redeemed well after the timeframe guaranteed whereby the value of the card significantly declined (such as the card Mr. Brashear should have obtained approximately two years ago), the global value of all potential class members' claims is extremely high..[18]

Based on the allegations presented herein, that collectors around the country have fallen victim Panini's deceptive and predatory scheme, and the fact that the Putative Class Plaintiffs Brashear and Kitchen reside in Texas and Florida respectively, this Honorable Court could reasonably infer from the nature of the underlying claims that putative class members are

---

[16] Rec. Doc. 13, First Amended Complaint – Class Action, ¶ 4.
[17] Rec. Doc. 13, First Amended Complaint – Class Action, ¶ 4.
[18] In accordance with Local Rule 23.2, the size of the potential class and the estimated value of individual redemption card claims form the basis for determining the jurisdictional amount in this matter.  See Rec. Doc. 13, First Amended Complaint – Class Action, ¶ 4.

geographically dispersed.[19] As to geographic dispersion of the class, Panini is in possession of the names and addresses (home and email) of all class members. Upon information and belief, discovery will show that putative class members are throughout this country.

Seeing as Panini possesses this identifying information, as well as information providing when the redemptions were claimed and when, if at all, Panini provided actual or comparable cards, it will not be difficult to identify the class members. Obtaining records that are in Panini's possession identifying all consumers who have registered an account with Panini and providing details regarding the entire history of all redemptions that have been submitted should suffice to prove that the class action procedure is appropriate. Notice to the class can and will be targeted based the information in Panini's possession.

Considering the tens of thousands of class members scattered throughout this nation and the fact that individual claims will rarely exceed a few thousand dollars, joinder is impracticable. Thus, the numerosity prong of the test is met.

B.    *COMMONALITY*

FRCP 23(a)(2) requires that a question or questions of law and/or fact common to the class exist. A common question is one that, when answered as to one class member, "will affect all or a significant number of the putative class members."[20] When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more elements of that cause of action will be common to all of the persons affected.[21]

---

[19] See *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d at 25 ("Notwithstanding the lack of any direct evidence, the district court reasonably inferred from the nature of the putative class members' employment that some of them would be geographically dispersed.").

[20] *Forbush v. J.C. Penny Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993); *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001).

[21] Hebert B. Newberg, Newberg on Class Actions § 310 at 3-49 (4th ed. 2002).

Here, there are numerous common issues of fact and law that affect all of the putative class members. This action presents questions of law and fact common to the Class including:

  a. Whether Panini engaged in a pattern or practice designed to deceive the Class;

  b. Whether Panini knew that it would not deliver the promised cards timely, or if at all;

  c. Whether Panini intended to induce Plaintiffs into a transaction into which the Plaintiffs would not have entered had the information been disclosed;

  d. Whether Panini unfairly, unlawfully and/or deceptively failed to inform Class Members that it would not deliver the promised cards timely, or if at all;

  e. Whether Panini's failure to inform class members that it would not deliver the promised cards timely, or if at all, was intended to induce them to purchase its products;

  f. Whether Panini's unfairly, unlawfully and/or deceptively failed to provide Class Members with an adequate warning regarding the expiration of redemption cards and continued to sell products with these worthless redemptions;

  g. Whether Panini's actions regarding the use of expiration dates on redemption cards is unlawful and unconscionable under the Texas DTPA;

  h. Whether Panini's conduct violates the Texas Deceptive Trade Practices Act "DTPA", V.T.C.A., Bus. & C. § 17.41, *et seq*;

  i. Whether Panini had a duty to fill redemption cards in the manner as stated on its own website;

  j. Whether Panini breached its duty to fill redemption cards in the manner as stated on its own website;

  k. Whether the Class Members were injured because of Panini's breach of its duty to fill redemption cards in the manner as stated on its own website; and,

  l. Whether Panini was unjustly enriched as a result of its actions.

Once these common questions of law and fact have been answered, those common issues will have been decided for all class members. The claims of all class members will hinge on common questions regarding Panini's pattern and practice of deception, negligence and liability.

C.     *TYPICALITY*

FRCP 23(a)(3) requires that the claims of the class representative(s) be typical of the claims of the class members as a whole. It does not require a complete identity of claims but simply requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[22] Like commonality, the test for typicality is not demanding.[23] It exists when the claims of the named and unnamed plaintiffs have a common source and rest upon the same legal and remedial theories.[24] Generally, when it is alleged that the same unlawful tortious conduct was directed at or affected both the class representatives and the class sought to be represented, the typicality requirement is met irrespective of varying fact patterns which may underlie individual claims.[25]

Here, the claims brought by Class Representative Plaintiffs are typical of the Class because the claims of Plaintiffs and the Class Members arise from the same set of facts and they all seek the same relief. The claims of all arise from Panini's failure to deliver valuable, sought after trading cards, or comparable substitutes, arising out of its "redemption card" program. Moreover, the claims of the Plaintiffs and the Class Members arise out of the same course of conduct by Panini.

Plaintiffs and Class Members were subject to the same deceptive and misleading representations of Panini which induced them into purchasing Panini's product. Plaintiffs and the

---

[22] FRCP 23(a)(3).
[23] *Mullen v. Treasure Chest Casino*, 186 F.2d 620, 625 (5th Cir. 1999).
[24] *Mullen v. Treasure Chest Casino*, 186 F.2d at 625.
[25] Hebert B. Newberg, Newberg on Class Actions § 313 at 3-77 (3rd ed.).

Class Members were induced to purchase Panini's products due to Panini's promise that if Plaintiffs received a "redemption card" in their pack of cards then Panini would redeem the same by delivering a valuable, sought after trading card, or comparable substitute. Plaintiffs and Class Members redeemed the "redemption cards" they received in accordance with Panini's procedures provided on its website.  Despite these efforts to redeem, Panini failed to deliver, timely and/or otherwise, the valuable, sought after trading cards, or comparable substitutes, as promised. Plaintiffs and Class Members sustained the same injuries and damages arising out of Panini's conduct in violation of the law. The injuries and damages of each Class Member were caused directly by Panini's wrongful conduct in violation of law as alleged. Thus, the requirement of typicality is met.

D.     *ADEQUACY*

FRCP 23(a)(4) requires that the class representatives be adequate to represent the interests of the class. To satisfy this requirement, the class representatives' interests must be aligned with, and not antagonistic to, unnamed class members.[26] A sufficient alignment of interest exists when "all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class."[27] The question is whether the representatives will "fairly and adequately" represent the interests of the class.[28] Proving individual damages is not required at the class certification stage.[29] Class certification is procedural, not merits dispositive.

The U.S. Supreme Court has recognized that the adequacy and representation requirements "tends to merge" with the commonality and typicality requirements, all of which "serve as

---

[26] *Mullen v. Treasure Chest Casino*, 186 F.2d at 625-626.
[27] *In re: Corrugated Container Antitrust Litigation*, 643 F.2d 195, 208 (5th Cir. 1981).
[28] FRCP 23(a)(4).
[29] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).

guideposts for determining whether the maintenance of the class is economical and whether the named plaintiffs and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence."[30]

Plaintiffs will fairly and adequately represent the interests of the Class because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair, deceptive and illegal conduct of which they complain, as well as potentially make a change to Panini's redemption program so that these unlawful actions do not continue. Here, the claims of the proposed class representatives are interrelated with the claims of the absent class members to such a degree that it is certain that the interests of the absent class members will be adequately and fairly protected. Plaintiffs also have no interests that are in conflict with or antagonistic to the interests of Class Members. Here, the proposed class representatives have met with counsel, provided relevant documents, will provide relevant testimony, and are willing to testify at deposition and at trial.

Also, Plaintiffs have retained counsel who are able and experienced in class action litigation and who have the necessary financial resources to adequately fund and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties by seeking the maximum possible recovery for Class Members.

E.    *PREDOMINANCE*

FRCP 23(b)(3) states that a class can be maintained if the Rule 23(a) factors are met and "the court finds that the questions of law or fact common to class members predominate over any

---

[30] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997); *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 151, n.13 (1982).

questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.[31] In order to "predominate," common issues must constitute a significant part of the individual cases.[32] The purpose of the predominance requirement is to ensure that a proposed class is "sufficiently cohesive to warrant adjudication by representation."[33] Individual questions of causation or damages which do not predominate over common issues will not prevent certification.[34]

In the instant case, the common questions of liability clearly predominate over any pertinent questions to individual members. Specifically, questions of law and fact regarding liability of Panini are common to Class Members and predominate over any individual issues that may exist, such, that by prevailing on their own claims, Plaintiffs necessarily will establish Panini's liability to all Class Members. There are no individual questions which predominate over the overarching common liability questions.

Ultimately, this case involves a bait and switch. The bait was expensive collector cards. The switch was replacing them with redemption cards which were never intended to be redeemable. The claims presented herein are claims specific to Panini's program for placing redemption cards in boxes of sports cards that it manufactures, sells, distributes, etc., and the fundamental failure of Panini to honor its guarantees associated with the program, and the legal violations as a result.

Once Class Representatives Brashear and Kitchen prove Panini's, Plaintiffs necessarily will establish Panini's liability to all class members and the central issue of causation. The

---

[31] FRCP 23(b)(3).
[32] *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).
[33] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).
[34] 7A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780 at 576-577 (2nd ed. 1986).

questions regarding Panini's liability to Plaintiffs and the Class Members predominate over any individualized issues which may exist, such as the value of individual cards of which an individual class member was deprived. For these reasons, the requirement of predominance is met.

    F.    *SUPERIORITY*

    FRCP 23(b)(3) requires that the class action be superior to other available methods for fairly and efficiently adjudicating the controversy.[35] In mass actions such as this one, the legal and factual issues involving a defendant's liability do not differ dramatically from one plaintiff to the next.  The common liability issues can be tried in a single class action trial with any individual issues of damages reserved for individual treatment.[36]

    A class action is superior to other available methods of adjudicating the claims in this action because individual damages to any one class member are relatively small, making the expense of prosecuting or controlling individual litigations prohibitive or impractical for Class Members. Also, upon information and belief, no member of the class has commenced litigation to determine the questions presented. Moreover, a class action can be managed with efficiency and without undue difficulty because Panini has used the same standardized misrepresentations and the same standardized redemption procedures to deceive all, and the Plaintiffs and Class Members were similarly affected by Panini's deceptive scheme.

    Finally, it would save an enormous amount of judicial resources to have the common liability and causation issues tried one time instead of having these same issues tried over and over again, risking inconsistent verdicts and resulting in lengthy delays as plaintiffs have to wait in line

---

[35] FRCP 23(b)(3).
[36] *Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558 (S.D. Fla. 1973) affirmed without opinion 507 F.2d 1279 (5th Cir. 1975); *Sterling v. Velisicol Chemical Corp.*, 855 F.2d 1188, 1197 (2nd Cir. 1987).

to try the same issues of liability and causation over and over again. Considering judicial economy and the desire for consistent judicial rulings, the class mechanism is superior to multiple trials where the same liability questions would have to be answered by the trier of fact.

## VI.    PROPOSED CLASS COUNSEL

Proposed Class Counsel are Scott R. Bickford, Lawrence J. Centola, III, and Jason Z. Landry from Martzell, Bickford & Centola, APC,[37] and Michael Roche of Roche & Company, LLC. Proposed Class Counsel represent that they satisfy the criteria set forth in Rule 23(g), having extensive experience in class action litigation.[38] Further, proposed Class Counsel represent that they will invest significant time and resources in this case, including reviewing documents, meeting with clients, drafting pleadings, hiring experts and participating in court hearings. Proposed Class Counsel are also qualified based upon extensive experience litigating major class actions and multi-district litigation cases.

## VII.    PROPOSED CLASS REPRESENATIVES

The proposed Class Representatives are Kevin B. Brashear and Christopher S. Kitchen. The proposed Class Representatives are consumers and collectors of sports collectibles, trading cards and certified memorabilia who have fallen victim to Panini's deceptive scheme and are thus intimately familiar with Panini's deceptive scheme. The proposed Class Representatives have been actively involved in fact development in this putative class action, have kept apprised of the litigation, are knowledgeable of the facts of this case, and are willing to provide relevant testimony at deposition, the class certification hearing, and at trial.

---

[37] Lawrence J. Centola, III and Jason Z. Landry are in the process of being admitted to practice in the Northern District of Texas.
[38] See Plaintiffs' Appendix, Exhibits 1, 2, and 3.

## VIII.   NOTICE TO CLASS MEMBERS

Given Panini's possession of identifying information for class members, such as names, home addresses and likely email addresses, class notice in this matter can be specific and targeted via the use of U.S. certified mail and email. The estimated expense for providing notice to each individual class member via the use of U.S. certified mail in this case is estimated at $5.00 per person. Unfortunately, at this early stage prior to class certification discovery, the full number of potential class members is not yet known by Plaintiffs. Thus, any estimate as to the full cost of notice in this case would be entirely speculative. Nevertheless, as set forth above, upon information and belief such number is determinable from the information possessed by Panini, including but not limited to the individuals who have entered codes to redeem their redemption cards for actual cards and the dates which Panini delivered the actual cards or comparable cards after the promised timeframe or outstanding redemptions which have still not been delivered by Panini. With this information in hand, the parties could determine the specific number of individuals who qualify for the Class.

Considering that redemptions are believed to be done in sequential order and the fact that there appears to have been over 1,000,000 redemptions as of January 2019, upon information and belief, Plaintiffs can reasonably estimate the total number of class members to somewhere in the tens of thousands. Based on the above estimate of notice via U.S. certified mail, that would put the cost of class notice well over $50,000. Unless otherwise ordered by this Honorable Court or an agreement is reached with Panini, all costs of class certification notice will be paid by the undersigned attorneys for Plaintiffs.

### IX.    CLASS CERTIFICATION DISCOVERY -N.D. Tex. R. 23.2(f)

To thoroughly prepare for the class certification hearing, Plaintiffs will need to conduct the following discovery:

1.  Written discovery to identify (a) all potential class members, including their name, home address, email address and other personal information; (b) the total number of redemptions that have been submitted to Panini; (c) when each redemption was submitted; (d) if and when they were ever fulfilled/redeemed; (e) if and when, in the alternative, they were ever processed with a "comparable" card, and the value of that card compared to the actual card that should have been received; (f) the value of the card on the redemption at the time it was submitted for processing through the time it was guaranteed to be delivered, as opposed to its current value; and (g) the identification of and number of expired redemption cards that were never redeemed by Panini.

2.  Depositions of a sufficient number of Putative Class Plaintiffs, the Class Representatives and the corporate representative(s) of Panini.

Plaintiffs anticipate that such discovery could likely take approximately one year to be completed.

### X.    PAYMENT OF PLAINTIFFS' ATTORNEY'S FEES

At the conclusion of the litigation, class counsel will seek a percentage fee award from Court consistent with the factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*[31] Class Counsel has not yet determined the amount that will be sought from the Court

---

[31] 488 F.2d 714 (5th Cir. 1974).

as the litigation is in its infancy and the *Johnson* factors take into account facts that have not yet occurred such as the amount involved and the results obtained.

## XI.    CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Putative Class Representatives respectfully request that the Court enter an Order:

A.    Certifying for litigation purposes only the following class of persons:

> **All persons who have initiated the redemption process for an actual card on Panini's website and who did not receive a card within the selected timeframe (4 or 8 months) and/or persons who initiated the redemption process for an actual card and the redemption was rejected as expired.**

B.    Appointing Scott R. Bickford, Lawrence J. Centola, III, and Jason Z. Landry from Martzell, Bickford & Centola, APC, and Michael Roche of Roche & Company, LLC as Class Counsel pursuant to FRCP 23(g) for purposes of representing the Class and Class Members in this litigation; and

C.    Appointing Kevin B. Brashear and Christopher S. Kitchen as Class Representatives.

Respectfully Submitted,

**MARTZELL, BICKFORD & CENTOLA**

*/s/ Scott R. Bickford*
**SCOTT R. BICKFORD, T. A. (TX 02295200)**
usdcedtx@mbfirm.com
338 Lafayette Street
New Orleans, LA 70130
Tel:    (504) 581-9065
Fax:    (504) 581-7365
**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2019, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

/s/ Scott R. Bickford
Scott R. Bickford