IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KEVIN B. BRASHEAR and** | § | |
| **CHRISTOPHER S. KITCHEN,** | § | |
| *individually and on behalf of* | § | |
| *similarly situated individuals*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. **3:19-CV-201-L** |
| **PANINI AMERICA, INC.,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion" or "Motion to Dismiss") (Doc. 15), filed April 22, 2019.  Defendant moves to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs maintain that they have pleaded sufficient facts to support subject matter jurisdiction under the Class Action Fairness Act ("CAFA") and state valid claims upon which relief can be granted but request, in the alternative, that they be allowed to conduct jurisdictional discovery if the court determines that their pleadings are insufficient to satisfy the CAFA's jurisdictional requirements.  After considering the Motion to Dismiss, response, reply, the pleadings, and record in this case, the court **grants** the Motion to Dismiss under Rule 12(b)(1), **dismisses without prejudice** this action for lack of subject matter jurisdiction, **denies** Plaintiffs' request to conduct jurisdictional discovery, and **denies as moot** Defendant's Motion to Dismiss under Rule 12(b)(6).

## I.      Factual and Procedural Background

On January 25, 2019, Kevin B. Brashear ("Brashear"), a Texas citizen, brought this action, individually and on behalf of similarly situated individuals, against Panini America, Inc. ("Panini" or "Defendant"), a citizen of Texas, alleging that the court has subject matter jurisdiction under the CAFA, 28 U.S.C. § 1332(d), which applies to class actions.  Brashear alleged that the "class is so numerous and widespread that joinder of all issues of plaintiffs is impracticable"; that the number of consumers affected by Panini's conduct was "anticipated to be in the millions"; and that the action was brought under the CAFA because the "potential recovery is so small for each class member" that no attorney would have the financial resources to represent the class.  Pls.' Am. Compl. ¶ 21.

On March 29, 2019, after Panini moved to dismiss the action under Rules 12(b)(1) and 12(b)(6), Brashear sought, and was granted, leave to amend his pleadings.  In an effort to cure the jurisdictional deficiencies identified in Panini's first motion to dismiss, the First Amended Complaint ("Amended Complaint") adds Christopher S. Kitchen ("Kitchen"), a citizen of Florida, as a plaintiff and class representative, and includes additional allegations regarding the number of class members and amount in controversy. The court refers herein to Brashear and Kitchen collectively as "Plaintiffs."  The Amended Complaint also includes causes of action for alleged violations of the Texas Deceptive Trade Practices Act ("DTPA"), fraud, conspiracy to defraud, negligence and false advertising, and unjust enrichment, for which Plaintiffs seek compensatory damages, punitive damages, attorney's fees, interest, and costs.

Plaintiffs' claims pertain to the redemption process that Panini uses for collectible sports cards that it manufactures. Plaintiffs allege, and Defendant does not dispute, that "Panini

manufactures . . . collectible cards featuring a sports personality [that] are sealed in packs (so that the consumer does not know which individual cards it may receive) that are then sold in boxes"; that [t]hese boxes contain either one or multiple packs of sealed cards, depending on the product"; and that inside the sealed packs of cards, "Panini randomly places one or more 'redemption cards' instead of an actual card featuring a sports personality." Pls.' Am. Compl. ¶ 7. Plaintiffs explain that a redemption card is "simply a white piece of cardboard with a code that has to be scratched off and entered on Panini's website . . . to receive the actual card featuring the sports personality, which is a card signed by the sports personality identified on the redemption card." *Id.* Plaintiffs further allege that, as noted on Panini's website, redemption cards are placed in the card packs "instead of the actual card because Panini has not had the card autographed by the player by the time the product is packaged." *Id.* Plaintiffs allege that, while Panini's website discloses that it "reluctantly uses redemptions," the use of redemption cards is very common, and Panini states on its website that it "makes every effort to exhaust all possibilities before designation [sic] a redemption card." *Id.* Plaintiffs allege that, despite this assurance, Panini has a pattern of not adhering to the redemption process posted on its website, that numerous complaints with the Better Business Bureau ("BBB") have been lodged against Panini for its failure to adhere to its redemption process and not fulfilling redemption requests, and that Plaintiffs and others have suffered damages as a result.

On April 22, 2019, Panini moved again to dismiss the action under Rules 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Panini continues to maintain that Plaintiffs' pleadings are insufficient to satisfy the CAFA's jurisdictional requirements with respect to the number of class members and amount in controversy based on allegedly unfilled redemption requests.  The next day, Plaintiffs filed a motion to certify

the class, which included a request to conduct depositions and written discovery for a period of

*approximately one year* to:

> identify (a) all potential class members . . . ; (b) the total number of redemptions that
> have been submitted to Panini; (c) when each redemption was submitted; (d) if and
> when they were ever fulfilled/redeemed; (e) if and when, in the alternative, they were
> ever processed with a 'comparable' card, and the value of that card compared to the
> actual card that should have been received; (f) the value of the card on the
> redemption at the time it was submitted for processing through the time it was
> guaranteed to be delivered, as opposed to its current value; and (g) the identification
> of and number of expired redemption cards that were never redeemed by Panini.

Pls.' Mot. to Certify Class 26.  Plaintiffs maintained that such information was necessary for them

to prepare for a hearing on their class certification motion.  A few days later, Panini filed an

unopposed motion to stay Plaintiffs' class certification motion.  Instead of staying the motion, the

court denied it without prejudice.

On May 13, 2019, Plaintiffs filed their response to Panini's Motion to Dismiss, contending

that the Motion should be denied.  Plaintiffs' response also includes an alternative request to conduct

"*limited* jurisdictional discovery."  Pls.' Resp. to Mot. to Dismiss 12-13 (emphasis added).  On one

hand, Plaintiffs steadfastly maintain that their pleadings, as amended, are sufficient to establish

jurisdiction under the CAFA and state valid claims.  On the other hand, Plaintiffs insist that

"Panini's Motion raises a large number of issues that are far too early to decide, and which will

require *extensive* discovery in this matter, as well as those which are more appropriate on the class

certification motion."  *Id.* at 6 (emphasis added).  In its reply, Panini maintains that it is entitled to

dismissal of this action under Rule 12(b)(1) and (b)(6), and opposes Plaintiffs' request to conduct

discovery of any kind.

The court's analysis focuses on subject matter jurisdiction and Plaintiffs' request to conduct

jurisdictional discovery, as these issues are dispositive.  *See Ramming v. United States*, 281 F.3d

158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.") (citations omitted).

## II.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377 (citations omitted). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).

As noted, Panini contends, as it did in its prior motion to dismiss, that the court lacks subject matter jurisdiction because Plaintiffs have not satisfied the CAFA's jurisdictional requirements. Under the CAFA, a federal district court has original subject matter jurisdiction over a class action

in which: (1) there are 100 or more proposed class members; (2) at least some of the members of the proposed class have a different citizenship from the defendant; and (3) the aggregated claims of the proposed class members exceed the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d).

Panini acknowledges that the addition of Kitchen, a Florida citizen, cures the deficiency with respect to the second requirement but argues that Plaintiffs' allegations are conclusory and insufficient to satisfy the CAFA's first and third requirements, which Panini contends are "not supported by any proof":

> Plaintiffs' allegations that the putative class action consists of 100 or more class members, and that the amount in controversy exceeds $5 million, are conclusory and not supported by any proof. Panini disclaims the "value" of its products on the secondary market; and tellingly, the Amended Complaint is silent regarding the alleged "value" of Plaintiffs' specific redemptions at issue. Moreover, Plaintiffs do not (and cannot) allege that Panini simply does not fulfill redemptions. Plaintiffs' damages (if any), are their actual, out-of-pocket damages—i.e., the price paid for a pack of cards that included an unfulfilled redemption, minus the residual value of its other contents. Of course, that analysis will be different for each and every pack of cards (and the residual "value" of some packs with unfulfilled redemptions may, nevertheless, still exceed their purchase price). Furthermore, different sets are sold at different prices (although packs within the same set are uniformly priced).
>
> Thus, even assuming that Plaintiffs' claims had merit (which they do not), to satisfy the amount in controversy requirement under CAFA, Plaintiffs would need to show approximately 200,000 unfulfilled redemptions, assuming the average pack containing a redemption is $25 (which is high, and which also fails to account for the residual value of its other contents). Even then, Plaintiffs would still need to satisfy the commonality and typicality requirements to certify such a class (which Plaintiffs cannot do). Conclusory allegations regarding the number of redemption requests (which is the alleged number of *total* redemptions, <u>not</u> *unfulfilled* requests)—as well as unqualified statements regarding "value" on the secondary market—are clearly intended to get the Court's attention; however, they are not relevant to the Court's analysis. Accordingly, this case should be dismissed for lack of subject matter jurisdiction.

Def.'s Mot. to Dismiss 10.

**Memorandum Opinion and Order – Page 6**

While Panini submitted evidence in support of its request to dismiss Plaintiffs' claims under Rule 12(b)(6), *see* Def.'s Mot. to Dismiss 6 & n.3, its Motion does not include any citations to that evidence to support its jurisdictional argument or explain why the evidence submitted supports its Motion under Rule 12(b)(1). *See id.* at 9-10. The court, therefore, treats the Motion to Dismiss as a facial challenge to the court's jurisdiction. Because Panini's challenge is facial rather than factual,[1] Plaintiffs were not required, as Panini contends, to come forward with evidence to prove the existence of subject matter jurisdiction. The court, instead, examines the factual allegations in the Amended Complaint to determine whether it is "facially apparent" that the claims alleged by Plaintiffs exceed the $5,000,000 jurisdictional amount and whether there are 100 or more proposed class members. *See St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253-54 (5th Cir. 1998) (concluding that the procedures developed in removed actions, including the "facially apparent" test, are instructive for determining the amount in controversy in originally filed actions under 28 U.S.C. § 1332); *see also Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 862-64 (5th Cir. 2000) (unpublished) (applying the "facial-apparency test" in determining that the factual allegations in the plaintiffs' pleadings were insufficient to satisfy the CAFA's amount in controversy requirement) (citations omitted).

The amount in controversy is normally determined by the amount sought on the face of the plaintiff's pleadings, so long as the claim is made in good faith. *St. Paul Reinsurance Co.*, 134 F.3d at 1253. The "mere recitation" or "bare allegation" of jurisdictional facts, however, is insufficient to establish subject matter jurisdiction. *Id.* at 1253; *Berniard*, 481 F. App'x at 863 n.19 (citation

---

[1] Challenges to subject matter jurisdiction are either facial or factual in nature. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981). If a party relies only its motion, the challenge to subject matter jurisdiction is considered a facial attack, and the court's determination of the motion is based solely on the sufficiency of the plaintiff's pleadings, which must be accepted as true. *Id.*

Memorandum Opinion and Order – Page 7

omitted). That the plaintiff may not be entitled to recover on the merits an amount sufficient to give the court jurisdiction does not necessarily defeat jurisdiction or indicate bad faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938) (citation omitted). Ordinarily, to justify dismissal for lack of jurisdiction, it must be apparent to a "legal certainty" from the face of the pleadings or evidence submitted that the plaintiff's claim is for less than the jurisdictional amount. *Id.*; *St. Paul Reinsurance Co.*, 134 F.3d at 1253 (citation and footnote omitted). The "legal certainty" test does not apply, though, when "when the plaintiff has alleged an indeterminate amount of damages." *Id.* In this situation, "the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *Id.* at 1253 & n.13 (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995)). In other words, the plaintiff must show that "it is more likely than not" that the amount in controversy exceeds the jurisdictional amount. *Id.* at 1336. This "demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he [or she] seeks" if he [or she] prevails on the merits. *Berniard*, 481 F. App'x at 862 (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Berniard*, 481 F. App'x at 862 (citing *Spivey*, 528 F.3d at 986).

In response to Panini's Motion to Dismiss, Plaintiffs do not identify the specific allegations in their Amended Complaint that satisfy the CAFA's requirements for the number of class members and the amount in controversy. They, instead, simply respond to the Motion to Dismiss, contending that their allegations are sufficient to meet the CAFA's jurisdictional requirements:

> Panini guarantees delivery of products and Panini does not honor its guarantee. . . .
> Panini knew it would and could not honor its guarantees [when] it made the
> guarantees to Plaintiffs and the Putative Class. These claims are supported by a
> tremendous number of posts and emails that have been written solely since the filing
> of this lawsuit, and those combined with the claims of additional Class Representative Kitchen,
> are sufficient to satisfy the requirements of the [CAFA] . . . since minimal
> diversity is met, and the number and amount of claims is well over 100 persons and
> $5,000,000.00, respectively. Panini underestimates the numbers, including the total
> amount in controversy, by failing to consider all of the damages to which the Putative
> Class is entitled, as well as the number of members, since not only those with
> "unfulfilled" redemptions have claims and fit the proposed class definition.
> Nevertheless, these are issues and facts that will be established through discovery and
> presented during the class certification hearing.

Pls.' Resp. to Mot. to Dismiss 12-13.

Even accepting as true the allegations in Amended Complaint, the court agrees with Panini

that Plaintiffs' pleadings are insufficient to establish subject matter jurisdiction under the CAFA.

Plaintiffs allege in their Amended Complaint as follows regarding the number of class members and

the damages suffered by the prospective class members:

> [T]he amount in controversy is in excess of $5,000,000 and there is minimal
> diversity with over 100 putative class members, thus CAFA jurisdiction exists.
>
> A recent redemption request in January 2019 was request number 1,141,367.
> Putative Class Plaintiffs allege that the redemption requests are numbered
> sequentially, and thus there are over 1 million redemptions. Although individuals
> often have more than one outstanding redemption, the putative class far outnumbers
> 100 persons.
>
> The autographed cards that are being unlawfully withheld from the consumer
> class can be worth up to over $1000 per card. In light of the purported value of the
> cards being unlawfully withheld from customers and in light of the amount of
> unfulfilled redemptions, the amount in controversy is over $5,000,000.

Pls.' Am. Compl. ¶ 4.  Plaintiffs also allege that 185 complaints were lodged with the BBB

regarding Panini's failure to honor its redemption process.  *Id*. ¶ 11.  According to the Amended

Complaint, Panini's "failure to timely redeem redemption cards" and its "practice of marketing,

distributing and selling redemption cards [that] have already expired is a worldwide problem" that can or has caused Plaintiffs to suffer an unspecified amount of economic damages:

> The delay or failure to redeem causes damage to the putative class because the redeemable cards are more often than not of players whose cards are in high demand at the time of receipt of the redemption card. A delay can cause the value of said actual card to diminish and, of course, failure to ever supply the actual card causes additional damage. The putative class is damaged because the putative class is enticed to purchase Panini cards with the hope of obtaining a redemption card, the putative class obtains the redemption card which theoretically gives the class ownership of a valuable card, yet that valuable card is never provided to the putative class by Panini.

*Id*. ¶ 15.

Plaintiffs, as the proponents of federal jurisdiction under the CAFA, have the "burden of describing how the controversy exceeds $5 million." *Berniard*, 481 F. App'x at 862 (citing *Spivey*, 528 F.3d at 986). As the Fifth Circuit in *Berniard* explained, "[t]his is a pleading requirement, not a demand for proof. Discovery and trial come later." *Id.* Thus, the parties' contentions about whether Plaintiffs can ultimately prevail on their claims or satisfy the commonality and typicality requirements to certify a class are quite beside the point for purposes of determining whether the court has subject matter jurisdiction. Events that occurred after the action was filed are also irrelevant to the court's analysis because "jurisdictional facts must be judged as of the time the complaint is filed," not based on subsequent events. *St. Paul Reinsurance Co.*, 134 F.3d at 1253 (citing *St. Paul Mercury Indem. Co.*, 303 U.S. at 292). Accordingly, the court does not consider Plaintiffs' contention their pleadings are sufficient to satisfy the CAFA's requirements because their "claims are supported by a tremendous number of posts and emails *that have been written solely since the filing of this lawsuit*[.]" Pls.' Resp. to Mot. to Dismiss 12 (emphasis added); *see also* Pls.' Am. Compl. ¶ 25 ("[T]his is a global issue among many buyers of Panini's products, as established

by the numerous posts made throughout the Internet and specific complaints *we have received just since filing this lawsuit*.") (emphasis added).

The other jurisdictional allegations in the Amended Complaint fare no better. Plaintiffs allege that the amount in controversy is more than $5,000,000, and "the putative class far outnumbers 100 persons." Conclusory allegations such as this, without more, are insufficient to establish subject matter jurisdiction. *St. Paul Reinsurance Co.*, 134 F.3d at 1253; *Berniard*, 481 F. App'x at 863 n.19 (citation omitted). While the court can make "common-sense inferences" in determining whether the amount put at stake by the injuries claimed by the plaintiffs exceed $5,000,000, Plaintiffs' explanation of how the claims of the class could equal or exceed $5,000,000 is based entirely on speculation and overstates the number of potential class members and damages by equating, without explanation, the total number of redemption requests with the total number of unfilled redemption requests.

Even if the court assumes that there are more than 100 potential class members based on Plaintiffs' allegation that at least 185 complaints have been submitted to the BBB, it cannot plausibly conclude that the amount in controversy exceeds $5,000,000 because the alleged value of the cards is too indefinite. Specifically, Plaintiffs allege that "[t]he autographed cards that are being unlawfully withheld from the consumer class *can be worth up to over $1000 per card*." Pls.' Am. Compl. ¶ 4 (emphasis added). A value of "up to over $1000" encompasses values of $.01 to $1,000 and those exceeding $1,000. Accordingly, this allegation is too speculative and sheds no light on the potential value of the cards or the amount of economic or compensatory damages sought by Plaintiffs such that any aggregated damage estimate arrived at by multiplying the 185 class members

**Memorandum Opinion and Order – Page 11**

by a dollar value would result in an extrapolated economic damages amount based on pure conjecture.

In addition to economic damages, Plaintiffs allege that Panini's fraudulent actions warrant the imposition of noneconomic damages in the form of punitive damages and damages for mental anguish. Plaintiffs also allege that they are entitled to recover damages for mental anguish under Texas law as a result of Panini's negligence and false advertising. Additionally, Plaintiffs also include a request for attorney's fees in the prayer for relief of their Amended Complaint without indicating the legal basis for recovering attorney's fees.

Generally, penalties, statutory damages, punitive damages, and attorney's fees available by statute or contract are included in ascertaining the amount in controversy. *St. Paul Reinsurance Co.*, 134 F.3d at 1253.  Plaintiffs' response to the Motion to Dismiss, however, includes no discussion of how their request for punitive damages, mental anguish damages, and attorney's fees affects the calculation of the amount in controversy.  The court, therefore, addresses this issue without the benefit of input from Plaintiffs and simply assumes, without deciding, that the punitive damages, mental anguish damages, and attorney's fees sought by Plaintiffs are recoverable under Texas law.

Plaintiffs allege that they suffered mental anguish  because "[t]hey paid for a card that they never received anything of value for from Panini."[2]  This allegation does not provide the court with a sufficient basis to estimate reasonably a potential damages award for mental anguish.  The court's ability to estimate the amount of punitive damages that Plaintiffs might recover is similarly hampered.  Under Chapter 41 of the Texas Civil Practice & Remedies Code,  unless the recovery sought is for one of the enumerated felonies, the amount of punitive damages awarded "may not

---

[2] Pls.' Am. Compl. ¶ 25.

**Memorandum Opinion and Order – Page 12**

exceed an amount equal to the greater of: "(1)(A) two times the amount of economic damages; plus (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000." Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b).  Without information from which the court can plausibly estimate the amount of economic damages, punitive damages under § 41.008(b) total no more than $200,000.  Finally, the limited allegations in the Amended Complaint makes it impossible to estimate with any reasonable degree of certainty the amount of attorney's fees, and the court is not convinced that any such award, even if generous, would result in an aggregated damage amount that comes close to exceeding $5,000,000 as required for jurisdiction under the CAFA.

Accordingly, for all of these reasons, the court determines from the factual allegations contained in the Amended Complaint that Plaintiffs have not met their burden of demonstrating plausibly that the aggregated claims of the proposed class members exceed the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d).  Thus, even assuming that the Plaintiffs' pleadings are sufficient to establish that the proposed class members exceed 100, the court lacks subject matter jurisdiction, as all requirements for jurisdiction under the CAFA have not been met.

## III.   Request to Conduct Jurisdictional Discovery

"[S]ome jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact." *See In re MPF Holdings U.S. LLC*, 701 F.3d 449, 457 (5th Cir. 2012) (citation omitted). The decision to grant jurisdictional discovery, however, is discretionary. *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (concluding that the district court did not abuse its discretion in ruling on a Rule 12(b)(1) motion without allowing the plaintiff who filed the action to conduct jurisdictional discovery). "[T]he party opposing dismissal and requesting discovery . . .

bear[s] the burden of demonstrating the necessity of discovery." *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013) (citing *Freeman v. United States*, 556 F.3d 326, 341-42 (5th Cir. 2009)). The party requesting discovery is "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Id.* (quoting *Freeman*, 556 F.3d at 342).  Mere speculation is not sufficient to support a request for jurisdictional discovery.  *See NL Indus., Inc. v. OneBeacon Am. Ins. Co.*, 435 F. Supp. 2d 558, 566 (N.D. Tex. 2006) (explaining that a request to conduct jurisdictional discovery is appropriately denied "when the party requesting such discovery can only suggest or speculate that the requested discovery will shed light on or resolve the issues pertaining to diversity of citizenship."); *Catalyst Medium Four, Inc. v. CardShark, LLC*, 2015 WL 1412591, at *8 (W.D. Tex. Mar. 26, 2015) (concluding that a party's "request for jurisdictional discovery in the hopes it might, with any luck, reveal jurisdiction is a textbook fishing expedition").

As noted, Plaintiffs' assertion that the aggregated claims of the proposed class members exceed the sum or value of $5,000,000 is based purely on conjecture and speculation. They make no effort to identify the discovery sought or demonstrate their entitlement to and the necessity of jurisdictional discovery.  Plaintiffs, instead, merely assert, without elaboration, as follows:

> [T]hese are issues and facts [pertaining to the amount in controversy and number of class members] that will be established through discovery and presented during the class certification hearing.
>
> In the alternative, and in an abundance of caution, should this Honorable Court find that Plaintiffs have not submitted evidence sufficient to satisfy the jurisdictional requirements under CAFA, Plaintiffs respectfully request that the parties be given the opportunity to conduct limited jurisdictional discovery as to those issues.

Pls.' Resp. to Mot. to Dismiss 12-13.

**Memorandum Opinion and Order – Page 14**

From this, it also appears that Plaintiffs are operating under the mistaken assumption that they are automatically entitled to conduct discovery to establish subject matter jurisdiction under the CAFA.  Just as a removing defendant must allege the factual bases for federal jurisdiction in its notice of removal under § 1446(a), Plaintiffs in bringing this original action must also allege the bases for jurisdiction.  Thus, in filing this original action, Plaintiffs represented to the court that the case belongs in federal court, and having made this representation, Plaintiffs are no less subject to Rule 11 sanctions than a defendant who removes an action. Unlike a defendant in a diversity case who may have no actual knowledge of the value of the plaintiff's claims, a plaintiff bringing an original action is in a much better position to know the factual bases for federal jurisdiction because, in this situation, "the plaintiff chooses his forum" and, therefore, "knows or should know whether his [or her] claim is within the statutory requirement as to amount." *St. Paul Mercury Indem. Co.*, 303 U.S. at 392.  Accordingly, a suit that is originally brought in federal court is appropriately subject to challenge and dismissal by "resort to the face of his complaint," if it is apparent that the claims asserted "never could have amounted to the sum necessary" to support federal jurisdiction. *Id.*

Moreover, while Plaintiffs request in their response to the Motion to Dismiss to conduct *limited* jurisdictional discovery, it is clear from the scope of discovery sought in conjunction with their prior certification motion that the jurisdictional discovery sought is actually quite expansive, includes written discovery and depositions, and is anticipated to take approximately one year.  This indicates that the Plaintiffs are using this action to engage in an impermissible fishing expedition to look for information needed to support federal jurisdiction that they should have had before coming through the courthouse doors.  Additionally, the CAFA's legislative history indicates that

allowing a named plaintiff to engage in the type of extensive, burdensome jurisdictional discovery anticipated in Plaintiffs' certification motion would be improper prior to class certification.[3]

For these reasons, and because Plaintiffs delayed unnecessarily, without explanation, until *after* Panini moved the *second* time to dismiss this action under Rule 12(b)(1) before seeking to conduct jurisdictional discovery, and buried their request in their certification motion and response to the motion to dismiss without adequately briefing the issue, the court determines that Plaintiffs are not entitled to conduct the jurisdictional discovery sought before the court rules on Panini's Motion. Plaintiffs' request to conduct jurisdictional discovery is, therefore, **denied**.

## IV. Further Amendment of Pleadings

The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court

---

[3] The Senate Committee on the Judiciary made clear that jurisdictional discovery under the CAFA was to be limited in scope:

> The Committee understands that in assessing the various criteria established in all these new jurisdictional provisions, a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes. The Committee further understands that in some instances, *limited* discovery *may* be necessary to make these determinations. However, the Committee cautions that these jurisdictional determinations should be made largely on the basis of *readily available information*. Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions[.] . . . *For example, in assessing the citizenship of the various members of a proposed class, it would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class members (or detailed information that would allow the construction of such a list), [that] in many instances [will result in] a massive, burdensome undertaking that will not be necessary unless a proposed class is certified*. Less burdensome means (e.g., factual stipulations) should be used in creating a record upon which the jurisdictional determinations can be made.

S. Rep. No. 109-14, at 44(2005) (emphasis added).

**Memorandum Opinion and Order – Page 16**

considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Plaintiffs have not requested to further amend their pleadings. They, instead, contend that their pleadings, as amended, "clearly establish support" for the claims asserted, which is irrelevant in light of the court's ruling that it lacks subject matter jurisdiction. Regardless, when a plaintiff has previously amended his or her pleadings, "[a]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986); *see also Schiller*, 342 F.3d at 567 (citation omitted). Here, Plaintiffs have failed to allege sufficient facts to satisfy their burden of establishing subject matter jurisdiction under the CAFA despite being allowed to amend their pleadings. Moreover, their request to conduct prohibitively extensive discovery for this purpose amounts to an improper fishing expedition that Plaintiffs did not seek to seek to embark upon until *after* Defendant moved a second time to dismiss this action for lack of subject matter jurisdiction. Thus, dismissal without prejudice under Rule 12(b)(1) is appropriate, as Plaintiffs have not satisfied their burden of pleading facts to support jurisdiction even though they had a fair opportunity to do so. *See id.*; *see also St. Paul Mercury Indem. Co.*, 303 U.S. at 392. Accordingly, the court will not and would not give them the opportunity to further amend their pleadings under the circumstances, even if they had requested to do so because proceeding in this manner would unfairly and unnecessarily delay the litigation and resolution of Panini's Motion to Dismiss.

**Memorandum Opinion and Order – Page 17**

## V.      Conclusion

For the reasons explained, Plaintiffs have failed to meet their burden of establishing the requirements for subject matter jurisdiction under the CAFA.  The court, therefore, **grants** Panini's Motion to Dismiss (Doc. 15) under Rule 12(b)(1), **dismisses without prejudice** this action for lack of subject matter jurisdiction, **denies** Plaintiffs' request to conduct jurisdictional discovery (Doc. 21), and **denies as moot** Panini's Motion to Dismiss (Doc. 15) under Rule 12(b)(6).

**It is so ordered** this 21st day of May, 2020.

Sam A. Lindsay
United States District Judge